| | |
|---|---|
| BARJAN, LLC, on behalf of itself and all others similarly situated,<br><br>             Plaintiff,<br><br>   vs.<br><br>CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION PRODUCTS, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC., and UNITED COMPONENTS, INC.,<br><br>             Defendants. | Case No.: 3:08-cv-00534(JBA) |

*(additional caption on following page)*

## MOTION OF PLAINTIFFS S&E QUICK LUBE DISTRIBUTORS, INC. AND BARJAN, LLC, TO CONSOLIDATE AND COORDINATE ACTIONS <u>AND FOR APPOINTMENT OF INTERIM CLASS COUNSEL</u>

***ORAL ARGUMENT REQUESTED***
***TESTIMONY NOT NEEDED***

512487

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| S&E QUICK LUBE DISTRIBUTORS, INC., on behalf of itself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION PRODUCTS, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC., UNITED COMPONENTS, INC., and THE CARLYLE GROUP,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:08-cv-00475(JBA) |

　　　　Plaintiffs S&E Quick Lube Distributors, Inc. ("S&E Quick Lube") and Barjan, LLC (together

"Plaintiffs") hereby move this Court (1) pursuant to Fed.R.Civ.P. 42(a), for consolidation of the two

related direct purchaser class actions presently before the Honorable Janet Bond Arterton, and all

related direct purchaser class actions, filed in or transferred to this Court, involving common filters

price-fixing allegations and antitrust claims under the Sherman Act, 15 U.S.C. §1; and (2) pursuant to

Fed.R.Civ.P. 23(g) (2), for appointment of Interim Class Counsel.

512487

As more fully set forth in the accompanying Memorandum of Law and the Declaration of Bernard Persky (with the exhibits annexed thereto), granting this Motion will provide for the orderly and efficient conduct of the Actions.

WHEREFORE, the Plaintiffs respectfully request that the Court grant this Motion.

512487

Dated: April 25, 2008                    Respectfully submitted,

                                         /s/  Doug Dubitsky
                                         _____

                                         Kerry R. Callahan (ct06569)
                                         Doug Dubitsky (ct21558)
                                         UPDIKE, KELLY & SPELLACY, P.C.
                                         One State Street, Suite 2400
                                         Hartford, CT  06103
                                         Telephone: (860) 548-2600
                                         Facsimile: (860) 548-2680

                                         Bernard Persky
                                         Hollis L. Salzman
                                         Eric J. Belfi
                                         Gregory Asciolla
                                         Benjamin Bianco
                                         LABATON SUCHAROW LLP
                                         140 Broadway
                                         New York, NY 10005
                                         Telephone: (212) 907-0700
                                         Facsimile: (212) 818-0477

                                         *Attorneys for Plaintiffs S&E Quick Lube Distribs., Inc.
                                         and Barjan, LLC*

                                         Joseph C. Kohn
                                         William E. Hoese
                                         Douglas A. Abrahams
                                         KOHN SWIFT & GRAF, P.C.
                                         One South Broad Street, Suite 2100
                                         Philadelphia, PA  19107
                                         Telephone: (215) 238-1700
                                         Facsimile: (215) 238-1968

                                         *Attorneys for Plaintiff Barjan, LLC*

512487

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that, on this 24th day of April 2008, a copy of the foregoing MOTION OF

PLAINTIFFS S&E QUICK LUBE DISTRIBUTORS, INC. AND BARJAN, LLC, TO

CONSOLIDATE AND COORDINATE ACTIONS AND FOR APPOINTMENT OF INTERIM

CLASS COUNSEL, with accompanying Memorandum of Law and exhibits, was filed electronically

and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by

e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable

to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this

filing through the Court's CM/ECF System.


By: /s/ Doug Dubitsky
DOUG DUBITSKY, ESQ.
Fed. Bar. No. ct21558
Updike, Kelly & Spellacy, P.C.
P.O. Box 231277
One State Street
Hartford, CT  06123-1277
Tel. (860) 548-2600
Fax (860) 548-2680
ddubitsky@uks.com

512487

BARJAN, LLC, on behalf of itself and all others
similarly situated,

               Plaintiff,

     vs.

CHAMPION LABORATORIES, INC.,
PUROLATOR FILTERS N.A. L.L.C.,
HONEYWELL INTERNATIONAL INC., WIX
FILTRATION PRODUCTS, CUMMINS
FILTRATION INC., THE DONALDSON
COMPANY, BALDWIN FILTERS INC., BOSCH
U.S.A., MANN + HUMMEL U.S.A., INC.,
ARVINMERITOR, INC., and UNITED
COMPONENTS, INC.,

               Defendants.

Case No.: 3:08-cv-00534(JBA)

*(additional caption on following page)*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY
PLAINTIFFS S&E QUICK LUBE DISTRIBUTORS, INC. AND BARJAN, LLC
TO CONSOLIDATE AND COORDINATE ACTIONS AND FOR
<u>APPOINTMENT OF INTERIM CLASS COUNSEL</u>**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| S&E QUICK LUBE DISTRIBUTORS, INC., on behalf of itself and all others similarly situated, | |
| Plaintiff, | |
| vs. | Case No.: 3:08-cv-00475(JBA) |
| CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION PRODUCTS, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC., UNITED COMPONENTS, INC., and THE CARLYLE GROUP, | |
| Defendants. | |

Plaintiffs S&E Quick Lube Distributors, Inc. ("S&E Quick Lube") and Barjan, LLC (together "Plaintiffs") move this Court (1) pursuant to Fed.R.Civ.P. 42(a), for consolidation of the two related direct purchaser class actions presently before the Honorable Janet Bond Arterton, and all related direct purchaser class actions, filed in or transferred to this Court, involving common filters price-fixing allegations and antitrust claims under the Sherman Act, 15 U.S.C. §1; and (2) pursuant to Fed.R.Civ.P. 23(g) (2), for appointment of Interim Class Counsel.

# I.    PROCEDURAL BACKGROUND

On March 31, 2008, S&E Quick Lube filed in this Court the first filters direct purchaser antitrust class action complaint in the country against Champion Laboratories, Inc., Purolator Filters N.A. L.L.C., Honeywell International Inc., Wix Filtration Products, Cummins Filtration Inc., The Donaldson Company, Baldwin Filters, Inc., Bosch U.S.A., Mann + Hummel U.S.A., Inc., ArvinMeritor, Inc., United Components, Inc., and The Carlyle Group (collectively, "Defendants").[1] On April 10, 2008, Barjan, LLC filed a related action in this Court against Defendants. Both cases were assigned to United States District Judge Arterton.

In the interim, several additional Plaintiffs filed related class actions in this Court against Defendants, including: Flash Sales, Inc., No 3:08-cv-512(CFD) (April 4, 2008, assigned to the Honorable Christopher F. Droney), William C. Bruene, d/b/a Lone Star Lube, No. 3:08-cv-522(SRU) (April 8, 2008, assigned to the Honorable Stefan R. Underhill), and T.D.S. Company, Inc., d/b/a TWI Auto Parts & Supplies, No. 3:08-cv-528(MRK) (April 9, 2008, assigned to the Honorable Mark R. Kravitz) (collectively, "Related Actions"). Plaintiffs are in the process of moving to transfer the Related Actions to Judge Arterton, the judge in the first-filed case.[2]

---

[1] Defendant The Carlyle Group was voluntarily dismissed, without prejudice, on April 11, 2008, from S&E Quick Lube's Complaint and all other related complaints pending in this District in which it was named as a defendant.

[2] A list of all related actions pending in the District of Connecticut is attached hereto as Exhibit A to the Declaration of Bernard Persky ("Persky Declaration, attached hereto as Exhibit 2). All of the actions filed in this District include Labaton Sucharow LLP ("Labaton") as counsel because, as hereinafter described, Labaton is the only firm with access to the underlying factual information substantiating the detailed allegations set forth in the Actions (defined herein).

On April 10, 2008, Lovett Auto & Tractor Parts, Inc. ("Lovett Auto") filed an antitrust class action against Defendants[3] in the Northern District of Illinois, which essentially copies the substantive allegations made in the five actions filed in this District.

After the Illinois action was filed against the same Defendants alleging the same unlawful conduct under the antitrust laws, Plaintiffs in the actions filed in this District moved before the Judicial Panel on Multidistrict Litigation ("MDL Panel") to transfer and consolidate or coordinate the related antitrust actions in the District of Connecticut for pretrial proceedings pursuant to 28 U.S.C. § 1407.[4]

---

[3] United Components, Inc. is not presently a defendant in the Lovett Auto action.

[4] The Illinois plaintiff filed a separate motion before the MDL Panel one day after filing its complaint.  Pursuant to MDL Rule 1.5, the pendency of petitions before the MDL Panel to transfer cases does not stay proceedings in any of the actions referenced in the petition.

## II.    ARGUMENT

Each of the above-captioned class actions, as well as the Related Actions, (collectively, "the Actions"), assert that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs seek damages and injunctive relief on behalf of themselves and a proposed Plaintiff class. For the reasons set forth herein, the Actions, and all related class actions subsequently filed in or transferred to this Court, should be consolidated for coordinated proceedings before Judge Arterton. In addition, in order to ensure the efficient prosecution of these claims, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and the Proposed Order Consolidating and Coordinating the Actions and Appointing Interim Class Counsel submitted herewith ("Proposed Order"), Labaton should be designated Interim Class Counsel for these consolidated proceedings, with Updike, Kelly & Spellacy, P.C. designated as Liaison Counsel. Plaintiffs and counsel in all of the Actions support the relief requested by this motion.

### A.    <u>Consolidation Will Promote Efficiency and Judicial Economy</u>

Federal Rule of Civil Procedure 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a). Consolidation of related actions is favored. <u>See</u> <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 724 & n.10 (1966) ("Under the Rules, the impulse is toward

entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); <u>Schnall v. Annuity and Life Re (Holdings), Ltd., et al.,</u> No. 3:02-cv-2133 (GLG), 2004 WL 51117, at *1 (D. Conn. Jan. 2, 2004) (consolidating plaintiffs' cases "in the interests of judicial economy") (all unpublished cases are attached hereto as Exhibit 1); <u>see</u> <u>also</u> Manual for Complex Litigation § 10.123, 13-14 (4th ed. 2004) ("<u>Manual</u>").

The effect of consolidation is to permit joint proceedings but still maintain the two or more cases as separate suits with separate judgments:

> Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.

<u>Johnson v. Manhattan Ry. Co.,</u> 289 U.S. 479, 496-97 (1933).  Consolidation under Rule 42(a) is appropriate where, as here, the class members and defendants are essentially the same.  9 Wright & Miller, <u>Federal Practice and Procedure</u>, § 2384 p. 447 ("Actions involving the same parties are apt candidates for consolidation.").

Consolidation and coordination of the Actions for all purposes is also appropriate because the factual questions and legal issues presented by these actions — the existence and effect of a price-fixing conspiracy on the sale of filters — are the same.  <u>See</u> <u>Yungk v. Campbell Hausfeld/Scott Fetzer Co.,</u> Civ. No. 3:06-cv-00120, 2007 WL 2100114, at *1 (D. Conn., July 17, 2007) ("If the court determines that actions do involve a common question of fact or law, consolidation will usually be

allowed unless the opposing party can show prejudice."); <u>Kelleher v. ADVO, Inc.</u>, Civ. No. 3:06-cv-01422, 2007 WL 1232177, at *1 (D. Conn. Apr. 24, 2007) (consolidating cases where the moving party "demonstrated that [the] matters involve common questions of law and fact"); <u>Callahan v. Unisource Worldwide, Inc.</u>, No. 3:01-cv-1205, 2004 WL 413268, at *2 (D. Conn. Feb. 24, 2004) (finding consolidation appropriate because "there are common factual and legal issues" among the two cases).

Moreover, because the Actions are class actions, judicial economy is well-served by consolidating and coordinating the Actions into a single, unified proceeding that avoids the inefficiencies and confusion attending the parallel administration of multiple identical cases. <u>See, e.g.</u>, <u>Schnall</u>, 2004 WL 51117, at *1. This process will be further facilitated by the early appointment of Interim Class Counsel, as contemplated by Fed.R.Civ.P. 23(g) and as provided for, among other things, in the Proposed Order.

### B. Appointment of Interim Class Counsel Will Promote Efficiency

"[T]he primary responsibility of class counsel, resulting from appointment as such, is to represent the best interests of the class." <u>Coleman v. General Motors Acceptance Corp.</u>, 220 F.R.D. 64, 100 (M.D. Tenn. 2004); <u>see also</u> <u>In re Cardinal Health, Inc. ERISA Litig.</u>, 225 F.R.D. 552, 554 (S.D. Ohio 2005). To this end, the Federal Rules of Civil Procedure recognize the importance of an early appointment of counsel to act on behalf of a putative class. Rule 23(g)(2)(A) expressly grants

the Court the power to appoint interim class counsel before determining whether to certify the action

as a class action.

Rule 23(g)(1)(C) sets out those factors that must be considered in connection with the

appointment of class counsel.  In appointing class counsel, a court must consider:

- the work counsel has done in identifying or investigating potential claims in the action,

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

- counsel's knowledge of the applicable law, and

- the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(c); see also Landers v. Leavitt, 232 F.R.D. 42, 48 (D. Conn. 2005)

(appointing plaintiffs' attorneys as class counsel in "light of their experience and expertise in this area

of the law").  These factors militate strongly in favor of appointing Labaton as Interim Class Counsel.

### 1.  Proposed Interim Class Counsel Has the Experience, Knowledge, Resources and Other Qualifications

As courts evaluating Rule 23's adequacy of counsel's representation requirement in class

actions have repeatedly held, a class is fairly and adequately represented where counsel are qualified,

experienced, and generally are able to conduct the litigation on its behalf.  See Landers, 232 F.R.D. at

48.  Where proposed class counsel "include some of the most experienced lawyers in the United

States in the prosecution of antitrust ... class actions" and demonstrate that they are "ready, willing

8

and able to commit the resources necessary to litigate the case vigorously," the adequacy requirement is satisfied.  In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 515 (S.D.N.Y. 1996).

      As set forth in Labaton's resume attached hereto as Exhibit B to the Persky Declaration (attached hereto as Exhibit 2), Proposed Interim Class Counsel is among the most experienced firms in the country in the prosecution of complex antitrust class actions and, in addition, has taken significant steps to advance the Actions.

      As Co-Lead or Lead Counsel, Labaton's Antitrust Practice Group has achieved many outstanding results, including:

- In 2008, the Firm obtained preliminary approval of a partial settlement of $85 million on behalf of a class of those who used air cargo services in In re Air Cargo Shipping Service Antitrust Litigation.

- In 2006-2007, the Firm obtained final approval of settlements totaling almost $101 million on behalf of a class of NYMEX Natural Gas futures traders, the second-largest class action commodities manipulation recovery on record.

- In 2005-2006, the Firm obtained approvals of settlements totaling $47 million on behalf of a class of equity options purchasers injured by an alleged scheme to restrict the exchange listing of equity options.

- In 2004, the Firm obtained approval of a $90 million settlement to settle claims of monopolistic and anticompetitive conduct concerning BuSpar, an anti-anxiety drug.  In approving the $90 million settlement, Judge John Koeltl, of the United States District Court for the Southern District of New York, commented on the Firm's performance as Co-Lead Counsel, and stated:  "Let me say

that the lawyers in this case have done a stupendous job. They really have."

- In 2003, the Firm obtained settlements totaling $135.4 million against Mylan Laboratories, Inc., for unlawful and anticompetitive price increases for generic versions of the anti-anxiety drugs lorazepam and clorazepate.

- In 2002, the Firm obtained more than $18 million in settlements with Pfizer and Fujisawa on behalf of purchasers of the food additives maltol and sodium erythorbate.

- In 2001, the Firm obtained approval of a $44.5 million settlement with DuPont Pharmaceuticals Company on behalf of consumers, union health and welfare funds, and private insurers who purchased Coumadin, a blood-thinning drug.

- In 2000, the Firm obtained settlements totaling almost $90 million in class actions pending in California state court against Sumitomo Corporation and others, on behalf of business purchasers of copper products harmed by unlawfully inflated copper prices.

Labaton is currently actively engaged in the prosecution of antitrust class actions pending throughout the United States. It is presently Co-Lead Counsel in a number of major antitrust cases, including In re Marine Hoses Antitrust Litigation (S.D. Fla.); In re Air Cargo Shipping Services Antitrust Litigation (E.D.N.Y.); In re Natural Gas Commodity Litigation (S.D.N.Y.); In re Ciprofloxacin Antitrust Litigation (E.D.N.Y.); In re Foundry Resins Antitrust Litigation M.D.L. 1638 (S.D. Ohio); In re Parcel Tanker Shipping Services Antitrust Litigation (D. Conn.); In re Tricor Antitrust Litigation (D. Del.); In re Norvir Antitrust Litigation (N.D. Ca.); In re OxyContin Antitrust Litigation (S.D.N.Y.); and In re Energy Transfer Partners Natural Gas Litigation (S.D. Tex).

In addition, Labaton recently was selected by <u>The National Law Journal</u>, for the second year in a row, as one of the leading plaintiffs' class action firms in the country. <u>See</u> Exhibit C to Persky Declaration.

Proposed Interim Class Counsel proposes Updike, Kelly & Spellacy, P.C., as Liaison Counsel. This highly-regarded Connecticut firm (with offices in both Hartford and New Haven) has considerable expertise in complex, multi-party litigation in state and federal courts around the country. <u>See</u> Updike, Kelly Firm Description (attached hereto as Exhibit D to Persky Declaration).

As they have in the past, Proposed Interim Class Counsel and Liaison Counsel will ensure the vigorous, fair and efficient prosecution of this litigation.

## 2. <u>Proposed Interim Class Counsel Has Already Taken Substantial Steps to Advance the Litigation on Behalf of the Proposed Class And Committed Substantial Resources In Investigating And Developing The Case</u>

In this matter, Labaton is uniquely positioned and qualified to be appointed Interim Class Counsel. Each of the Actions is based on the comprehensive and intensive investigation, over many months, of the underlying facts by Labaton, which is listed as Counsel or Of Counsel in all of the Actions. In these efforts, Labaton has expended significant investigative and legal resources in obtaining the confidence of and working with a confidential informant, investigating the factual bases for the claims (alleging, among other things, an unlawful horizontal price-fixing conspiracy), conducting in person witness interviews across the country, and reviewing and analyzing

documentary materials and evidence, including probative recorded conversations, to verify the accuracy of the allegations in the Actions.[5]  In addition, Labaton has organized and received the support of the other law firms who have filed cases in this District.[6]

No other firm that has brought an Action has undertaken or participated in this comprehensive investigation of the relevant, underlying facts.  Specifically, the first-filed complaint, prepared by Labaton, along with the four other complaints filed in this District, each base a substantial portion of their detailed factual allegations, particularly with respect to the specifics of collusive meetings and unlawful agreements among the Defendants, on the personal knowledge of the confidential informant who was a senior sales executive employed by two of the Defendants.  Labaton has exclusive access to this critical evidence and has interviewed the confidential informant on multiple occasions. Neither the Plaintiff nor its counsel in the copycat Illinois action have direct (or indirect) access to any of this underlying evidentiary information.  In these circumstances, and in light of the consent to the relief requested herein by all other Plaintiffs' counsel in the Actions, Plaintiffs respectfully request that Labaton be appointed as Interim Class Counsel.

---

[5] To date, Labaton has committed almost 500 hours of lawyer, investigator and paralegal time in investigating and developing the case.
[6] The Labaton firm has spoken to counsel in the case pending in Illinois federal court, but has not heard back from that firm as of the date of this motion.

## IV.    CONCLUSION

For the reasons set forth herein, and in order to provide for the orderly and efficient conduct of the Actions, Plaintiffs respectfully request that the Court consolidate the Actions and any other related action subsequently filed in or transferred to this Court, and enter the Proposed Order attached hereto.

Dated: April 25, 2008                    Respectfully submitted,


/s/ Doug Dubitsky
_____

Kerry R. Callahan (ct06569)
Doug Dubitsky (ct21558)
UPDIKE, KELLY & SPELLACY, P.C.
One State Street, Suite 2400
Hartford, CT  06103
Telephone: (860) 548-2600
Facsimile: (860) 548-2680

Bernard Persky
Hollis L. Salzman
Eric J. Belfi
Gregory Asciolla
Benjamin Bianco
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

**Attorneys for Plaintiffs S&E Quick Lube Distribs., Inc.
and Barjan, LLC**

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

**Attorneys for Plaintiff Barjan, LLC**

Not Reported in F.Supp.2d                                                                                  Page 1
Not Reported in F.Supp.2d, 2004 WL 51117 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 51117)

**H**

Schnall v. Annuity and Life RE (Holdings), Ltd.
D.Conn.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Sherry SCHNALL, Individually and On Behalf of
All Others Similarly Situated Plaintiffs,
v.
ANNUITY AND LIFE RE (HOLDINGS), LTD.,
XL Capital, Ltd., Lawrence S. Doyle, Frederick S.
Hammer, John F. Burke, William W. Atkin, Brian
O'Hara, and Michael P. Esposito Jr. Defendants.
COMMUNICATIONS WORKERS OF AMERICA;
Midstream Investments Ltd, Individually and On
Behalf of All Others Similarly Situated Plaintiffs,
v.
KPMG LLP (UNITED STATES), Kpmg LLP
(United Kingdom), and Kpmg in Bermuda, Defend-
ants.
No. 302CV2133(GLG), 303CV1826(GLG).

Jan. 2, 2004.

RULING ON MOTION TO CONSOLIDATE RE-
LATED ACTIONS AND TO REQUIRE THE PRE-
SERVATION OF DOCUMENTS

GOETTEL, J.
**\*1** Before this court is plaintiffs' motion to consol-
idate the case entitled *Communications Workers of
America and Midstream Investments Ltd. v. KPMG
LLP (United States) et al.,* 3:03CV1826(GLG),
[*"KPMG* case"], with *Schnall v. ANR et al.,*
3:02CV2133(GLG) [ *"Schnall* case"], and to pre-
serve all documents relating to this litigation. For
the reasons set forth below, the court *grants*
plaintiffs' motion in part and *denies* plaintiffs' mo-
tion in part (*KPMG* Doc. # 5, *Schnall,* Doc. # 86).

*I. Factual History and Procedural Background*

The *Schnall* matter was commenced on December
4, 2002; subsequently, eight other cases were filed

against Annuity and Life Re (Holdings), Ltd.
["ANR"], and its officers and directors. On April 3,
2003, the court granted a motion to consolidate all
nine actions, with *Schnall* as the lead case and
Communications Workers of America and Mid-
stream Investments, Ltd. as lead plaintiffs. (*Schnall,*
Doc. # 33). On July 11, 2003, the *Schnall* plaintiffs
filed a consolidated amended class action complaint
against defendants, ANR, a Bermuda corporation
which sells annuity and life reinsurance products,
XL Capital, Ltd., owner of between 11.1% and
12.9% of ANR stock, and ANR's officers and dir-
ectors alleging violations of federal securities laws,
which injured purchasers of ANR securities
between March 15, 2000 and November 19, 2002
[the "Class Period"]. (*Schnall,* Doc. # 45). Several
of the defendants have filed motions to dismiss,
which are currently pending.

The *KPMG* case was commenced on October 23,
2003, alleging, *inter alia,* that KPMG, ANR's audit-
ors, fraudulently certified financial statements dur-
ing the Class Period. (*KPMG,* Doc. # 1). To date,
only KPMG LLP (United States) ["KPMG U.S."]
has filed an appearance. (*KPMG,* Doc. # 7)

*II. Discussion*

On November, 24, 2003, plaintiffs filed a motion to
consolidate the *KPMG* case with the *Schnall* case
and to preserve all documents relating to this litiga-
tion which is subject to the Private Securities Litig-
ation Reform Act of 1995 [the "PSLRA"]. Plaintiffs
argue that both actions assert substantially the same
claims and raise substantially the same questions of
fact and law and, thus, the court should consolidate
the two cases pursuant to Federal Rule of Civil Pro-
cedure 42. Plaintiffs note that the litigation is in the
early stages and that consolidation will not preju-
dice any of the defendants. (*Schnall* Doc. # 87 at 3).

ANR does not oppose plaintiffs' motion to consol-
idate. (*Schnall* Doc. # 95 at 1). KPMG U.S., one of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the defendants in the *KPMG* case, does not object to the motion to consolidate pursuant to Federal Rule of Civil Procedure 42(a), subject to and without waiving its rights to request a separate trial pursuant to Federal Rule of Civil Procedure 42(b). (*Schnall* Doc. # 96 at 2). Accordingly, in the interests of judicial economy, the court grants plaintiffs' request to consolidate the cases, without prejudice to defendants' rights to request a separate trial at a later and more appropriate phase of the litigation.

**\*2** Plaintiffs also request the court to order the preservation of all documents, including electronic documents, related to this litigation in accordance with 15 U.S.C. § 78u-4(b)(3)(C)(i). (*Schnall* Doc. # 87 at 4). Both ANR and KPMG U.S. object to this request. (*Schnall* Docs. # 95 at 1 & # 96 at 2). The preservation provision mandates that:

During the pendency of any stay of discovery pursuant to this paragraph, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(b)(3)(C)(i). The purpose of this provision is "in recognition that the imposition of a stay of discovery may increase the likelihood that relevant evidence may be lost."*In re Grand Casinos, Inc. Securities, Litigation,* 988 F.Supp. 1270, 1271 (D.Minn.1997) (internal quotation marks and citation omitted). The statute also provides for the possibility of court-ordered sanctions for a party's "willful failure" to comply with the duty to preserve relevant evidence. 15 U.S.C. § 78u4(b)(3)(C)(ii).

"[T]he preservation of evidence in the possession of the parties is statutorily automatic."*In re Grand Casinos, Inc. Securities Litigation,* 988 F.Supp. at 1273. Both ANR and KPMG U.S. have actual notice of the allegations against them. Furthermore, in their responses to plaintiffs' motion, both ANR and KPMG U.S. each have affirmatively stated that they are fully aware of their obligations under the PSLRA and the sanctions for failure to comply. (*Schnall* Docs. # 95 at 2 & # 96 at 2).*SeeIn re Tyco International, LTD. Securities Litigation,* 2000 WL 33654141, at \* 2 (D.N.H.2000) (denying request for order regarding the preservation of documents and data in the custody or control of defendants because order would unnecessarily duplicate or improperly alter obligations created under PSLRA). Accordingly, the court *denies* plaintiffs' request for the issuance of a preservation order.

*III. Conclusion*

For the reasons set forth above, the court *grants* plaintiffs' motion with respect to consolidation of the two cases, without prejudice to defendants' rights to request a separate trial at a later and more appropriate phase of the litigation, but *denies* plaintiffs' motion with respect to the issuance of a preservation order. (*KPMG* Doc. # 5 & *Schnall* Doc. # 86).

SO ORDERED.

D.Conn.,2004.
Schnall v. Annuity and Life RE (Holdings), Ltd.
Not Reported in F.Supp.2d, 2004 WL 51117 (D.Conn.)

END OF DOCUMENT

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 2100114 (D.Conn.)
**(Cite as: Slip Copy, 2007 WL 2100114)**

Yungk v. Campbell Hausfeld/ Scott Fetzer Co.
D.Conn.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
James YUNGK, et al., Plaintiffs,
v.
CAMPBELL HAUSFELD/ SCOTT FETZER
COMPANY, et al., Defendants.
Civil Nos. 3:06CV00120(AVC),
3:07CV00111(AVC).

July 17, 2007.

Jason L. McCoy, Michael J. Culkin, Law Office of
Jason L. McCoy, Ann Elizabeth Griffin, Vernon,
CT, for Plaintiffs.
Jeremy G. Zimmermann, Wiggin & Dana, New
Haven, CT, Marrianne Sadowski, Robert G. Huelin,
Wiggin & Dana, Ann M. Varunes, Varunes & As-
sociates PC, Mony BotumPho Yin, Law Offices of
David J. Mathis, Thomas A. Kyzivat, Hartford, CT,
for Defendants.

***RULING ON THE DEFENDANTS' MOTIONS
TO CONSOLIDATE, AND MOTION TO
STRIKE, AND THE INTERVENOR
PLAINTIFF'S MOTION TO INTERVENE, AND
ORDER TO SHOW CAUSE***

ALFRED V. COVELLO, U.S.D.J.
**\*1** These are actions for damages. They are brought
pursuant to the Connecticut Product Liability Act,
Conn. Gen.Stat. § 52-572m*et seq.* The plaintiffs,
James Yungk and Joyce Yungk ("Yungks"), alleges
in two separate actions that James Yungk was in-
jured by a defective grinding wheel, and further,
that the defendants, the manufacturer, distributor,
wholesaler, and retailer of the grinding wheel, are
liable to the Yungks for damages. James Yungk's
former employer, Lynch Motors, has intervened in
one of these actions, alleging that it is entitled to
the reimbursement of worker's compensation bene-
fits that it has paid to Yungk.

The defendants now move to consolidate the two
actions, to strike portions of the complaint, and for
sanctions. Further, Lynch Motors moves to inter-
vene in the action to which it is not already a party.

The issues presented are: 1) whether the two ac-
tions present common questions of law or fact; and
2) whether portions of the Yungks' complaint are so
unintelligible as to warrant a judicial remedy.

For the reasons set for hereinafter, the motions to
consolidate are GRANTED, and the motions to in-
tervene and to strike are DENIED.

**I. Motions for Consolidation**

Sherwin Williams Company ("Sherwin Williams")
and Campbell Hausfeld/ Scott Fetzer Company, de-
fendants in Civil No. 3:07CV00111 (AVC) and
Civil No. 3:06CV00120 (AVC) respectively, have
individually have moved in their respective cases to
consolidate these two actions. Specifically, both ar-
gue that the actions concern "common questions of
law and fact," and that "judicial economy and the
interests of the parties will be served by consolida-
tion."Neither the Yungks nor Lynch Motors has re-
sponded to these motions.

The Federal Rules of Civil Procedure provide that
when "actions involving a common question of law
or fact are pending before the court, ... it may order
all the actions consolidated...."Fed. R. Civ. Pro.
42(a). If the court determines that actions do in-
volve a common question of fact or law, consolida-
tion will usually be allowed unless the opposing
party can show prejudice. *See Seguro de Servicio
de Salud de Puerto Rico v. McAuto Sys. Group, Inc
.,* 878 F.2d 5, 8 (1st Cir.1989). In this regard, the
"court has broad discretion to determine whether
consolidation is appropriate."*Johnson v. Celotex
Corp.,* 899 F.2d 1281, 1284 (2d Cir.1990).

Having reviewed the complaints in these two mat-
ters, the court concludes that the actions concern

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

common questions of fact and law regarding the damages allegedly sustained by the Yungks while James Yungk was operating a grinding wheel. Accordingly, pursuant to Federal Rule of Civil Procedure 42(a), the motions to consolidate are granted. Hereafter, the parties shall file all pleadings and other papers in the docket of the earliest filed action, *Yungk v. Campbell Hausfeld/ Scott Fetzer Co.,* 3:06CV00120(AVC).*See* D. Conn. L. Civ. R. 42. To facilitate the crafting of an amended scheduling order in this matter, within thirty days of the entry of this ruling, the parties shall confer and jointly file a report satisfying the requirements of local form 26(f).*See* D. Conn. L. Civ. R.App.

## II. Motion to Intervene

**\*2** Lynch Motors has moved to intervene in the action to which it is not already a party. As the two actions are now consolidated, the motion to intervene is DENIED as moot.

## III. Motion to Strike or for a More Definite Statement

Sherwin Williams next moves to strike portions of the Yungks' complaint. Specifically, Sherwin Williams seeks to strike paragraphs 10(c), (d), and (e), which that state that "by virtue of General Statute § 52-572m*et seq.,*" the defendants are liable:

c. in that the warnings and instructions which were given and which accompanied said grinding wheel were inadequate and failed to provide sufficient notice to the plaintiff of the dangerous propensities of said product;

d. in that the defendants misrepresented to the plaintiff and the general public that the product in question was safe for use by the public; [and]

e. in that the defendants failed to disclose to the plaintiff and the general public the dangerous propensities of the product....

These allegations are preceded in the complaint by a statement that the defendants liable "in that the defendants failed to warn or instruct the plaintiff that the product in question was dangerous and subject to instantaneous explosion...." Sherwin Williams contends that this initial allegation is sufficient, and that those that follow should be stricken as "redundant, immaterial and impertinent." The Yungks have not responded to Sherwin Williams's motion.

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."Fed.R.Civ.P. 12(f). Despite the rule's clear terms, the Second Circuit has set a high standard for its application, cautioning that "courts should not tamper with the pleadings unless there is a strong reason for doing so."*Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976). As such, the striking of a pleading pursuant to Rule 12(f), "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised."*Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). Ultimately, motions to strike "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation."*Lennon v. Seaman,* 63 F.Supp.2d 428, 446 (S.D.N.Y.1999) (citation omitted).

While perhaps redundant,[FN1] the portions of the complaint in question are not "so confused, ambiguous, vague or otherwise unintelligible" as to disguise their meaning. *See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). Accordingly, the court concludes that there is no "strong reason" to excise them from the complaint. *See Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976). As such, the motion to strike is denied.

> FN1. Without presently attributing any legal import to the distinctions made in paragraphs 10(b), (c), (d), and (e), it would

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2100114 (D.Conn.)
(Cite as: Slip Copy, 2007 WL 2100114)

seem that a failure to warn the plaintiff of danger, a failure to *adequately* warn the plaintiff of danger, a misrepresentation that a product is safe, and a failure to warn the public of danger are conceptually distinct notions.

**\*3** Alternatively, Sherwin Williams would have the court order the Yungks to file a more definite statement in order to clarify the meaning of these seemingly repetitious allegations. In this respect, the motion is also denied.

Pursuant to Federal Rule of Civil Procedure 12(e), the court can only grant a motion for a more definite statement where a pleading is "so vague or ambiguous that [the] party cannot reasonably be required to frame a responsive pleading."Fed.R.Civ.P. 12(e). In this regard, a pleading is not subject to attack under Rule 12(e) if it satisfies the provisions of Rule 8(a) requiring a "short and plain statement of the claim showing that the pleader is entitled to relief...."Fed.R.Civ.P. 8(a); *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 35 (S.D.N.Y.1992). Such a statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Conley v. Gibson,* 355 U.S. 41, 47 (1957)."This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

It is not readily apparent why the Yungks drafted the complaint in such pleonastic terms. Nevertheless, it is sufficiently clear that the complaint alleges that the defendant, as the distributor of a defective grinding wheel, is liable "by virtue of General Statute § 52-572m*et seq.,*" the Connecticut Product Liability Act. Further, it is clear from the complaint that this liability stems in part from Sherwin Williams's alleged failure to warn the plaintiffs and the public of danger, from the inadequacy of any warning that Sherwin Williams gave, and from Sherwin Williams's misrepresentations regarding

the nature of the grinding wheel. Such allegations are sufficient to satisfy the notice pleading requirements of Rule 8(a), and as such, are not the proper subject of an attack brought pursuant to Rule 12(e). According, the motion for a more definite statement is denied.

**III. Motion for Sanctions**

Finally, Sherwin Williams moves for sanctions against the Yungks in light of their failure to participate in a scheduling conference, as required by Federal Rule of Civil Procedure 26(f). Specifically, Sherwin Williams argues that sanctions are appropriate because the Yungks "have made no response" to Sherwin Williams's "numerous attempts ... to contact the plaintiffs in order to appropriately and sufficiently proceed with discovery in this case...." The Yungks have not responded to this motion.

Pursuant to Rule 26(f), "the parties must, as soon as practicable ..., confer to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, ... and to develop a proposed discovery plan...."Fed.R.Civ.P. 26(f). The court's local rules require that the "conference ... be initiated by the plaintiff," and be held "[w]ithin thirty days after the appearance of any defendant...." D. Conn. L. Civ. R. 26(e). Where a party fails to comply with Rule 26(f), "the court may, after opportunity for hearing, require such party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure."

**\*4** As the Yungks have yet to be afforded a hearing regarding sanctions, the court declines to rule on the motion for sanctions. Nevertheless, the Yungks are ordered to show cause as to why they shall not pay the reasonable expenses, including attorney's fees, incurred as a result of their failure to participate in the development and submission of a proposed discovery plan. *See*Fed. R. Civ. Pro. 37(g). Following the entry of this order, the Yungks shall

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

have ten days to respond and to request a hearing on the matter. Absent a request from the Yungks, no hearing will be scheduled.

Additionally, within ten days of the entry of this order, Sherwin Williams shall file with the court an affidavit detailing the reasonable expenses, including attorney's fees, caused by the Yungks' failure to participate in the development and submission of a proposed discovery plan.

## CONCLUSION

The motions for consolidation (Civil No. 3:06CV0120(AVC) document no. 49, and Civil No. 3:07CV0111(AVC) document no. 18) are GRANTED. The motions to intervene (Civil No. 3:06CV0120(AVC) document no. 43) and to strike (Civil No. 3:07CV0111(AVC) document no. 10) are DENIED.

It is so ordered.

D.Conn.,2007.
Yungk v. Campbell Hausfeld/ Scott Fetzer Co.
Slip Copy, 2007 WL 2100114 (D.Conn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                   Page 1
Slip Copy, 2007 WL 1232177 (D.Conn.)
**(Cite as: Slip Copy, 2007 WL 1232177)**

Kelleher v. ADVO, Inc.
D.Conn.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Robert KELLEHER, et al., Plaintiffs,
v.
ADVO, INC., et al., Defendants.
**Civil No. 3:06CV01422(AVC).**

April 24, 2007.

John A. Lowther, Lerach Coughlin Stoia Geller
Rudman & Robbins, LLP, San Diego, CA, Nancy
A. Kulesa, Schatz Nobel Izard PC, Hartford, CT,
for Plaintiffs.
Ashley K. Handwerk, Rory Fitzpatrick, Sharleen
Joy Davis, William S. McDermott, Kirkpatrick &
Lockhart Preston Gates Ellis, LLP, Boston, MA,
Spencer A. Burkholz, Lerach Coughlin Stoia Geller
Rudman & Robbins, LLP, San Diego, CA, David J.
Elliott, Day Pitney LLP, Hartford, CT, Terence J.
Gallagher, III, Day Pitney LLP, Stamford, CT, for
Defendants.

*RULING ON THE PLAINTIFF'S MOTIONS TO
CONSOLIDATE, FOR APPOINTMENT AS
LEAD PLAINTIFF, FOR APPROVAL OF
COUNSEL, AND TO PARTIALLY LIFT THE
STAY ON DISCOVERY*

ALFRED V. COVELLO, United States District
Judge.
**\*1** This is an action for damages. It is brought pursuant the Securities Exchange Act of 1934, 15
U.S.C. § 78a*et seq.* The plaintiff, Robert Kelleher,
an owner of common stock in ADVO, Inc.
("ADVO"), alleges that the defendants, ADVO and
its directors and officers, issued false and misleading information in violation of federal securities
law. Kelleher brings this action individually, and on
behalf of all other similarly situated stockholders.

The issues presented are: 1) whether the cases that
Kelleher seeks to consolidate involve common
questions of law or fact; 2) whether Kelleher is the
member of the purported plaintiff class who is most
capable of adequately representing the interests of
the class members; 3) whether Kelleher's choice of
counsel is sufficiently qualified, experienced, and
able to represent the potential class; 4) whether lifting the stay on discovery imposed by the Private
Securities Litigation Reform Act of 1995
("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), is necessary to prevent the destruction of evidence; and 5)
whether lifting the PSLRA stay on discovery is necessary to prevent undue prejudice to Kelleher.

### A. Motion to Consolidate

Kelleher first moves to consolidate the present action with two other actions filed by fellow ADVO
shareholders, *Coronel v. ADVO, Inc.,*
3:06CV01457(AVC), and *Field v. ADVO, Inc.,*
3:06CV01481(AVC). This motion is unopposed.

The complaints in these three actions uniformly allege that in violation of federal securities law, the
defendants made false statements regarding
ADVO's financial value in order to ease a merger
with another company. Further, the complaints each
allege that the plaintiffs relied upon these statements to their detriment. Accordingly, for the purpose of the motion to consolidate these actions,
Kelleher has demonstrated that these three matters
involve common questions of law and fact.
*See*Fed.R.Civ.P. 42(a). Therefore, the motion to
consolidate is granted. Pursuant to D. Conn. L. Civ.
R. 42(a), the clerk shall maintain a separate docket
for each case, but the parties shall now file all papers in the docket of the earliest filed case, *Kelleher
v. ADVO, Inc.,* 3:06CV01422(AVC).

### B. Motion for Appointment as Lead Plaintiff

Kelleher next moves to be appointed lead plaintiff
of the consolidated action. This motion is similarly

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unopposed.

The United States Code calls for the court to appoint as lead plaintiff in a would-be class action securities case "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."15 U.S.C. § 78u-4(a)(3)(B)(i). The court presumes that a member is "most capable" where that member "has ... filed the complaint ..., has the largest financial interest in the relief sought by the class[,] and ... otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."15 U.S.C. § 78u-4 (a)(3)(B)(iii).

**\*2** Here, it is undisputed that Kelleher filed the complaint in this action, and that he has the largest financial interest in the relief sought by the prospective class. Moreover, for the purpose of this motion, Kelleher is able to satisfy the requirements of Rule 23.

Rule 23 provides that a member of a class may sue as the representative of the class only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

At this stage in the proceeding, for the purpose of appointing a lead plaintiff, the court need only consider the typicality and adequacy requirements of Rule 23. *Herrgott v. United States Dist. Court,* 306 F.3d 726, 730 (9th Cir.2002). "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993)

(citations omitted)."When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."*Id.*

The adequacy of representation requirement of Rule 23 calls for the court to resolve: "1) [whether the] plaintiff's interests are antagonistic to the interest of other members of the class and 2) [whether the] plaintiff's attorneys are qualified, experienced and able to conduct the litigation."*Baffa v. Donaldson,* 222 F.3d 52, 60 (2d Cir.2000).

In the present case, it is undisputed that Kelleher, like the potential class members, suffered damages as a result of purchasing ADVO stock in reliance on the allegedly false statements made by the defendants. Likewise, it is undisputed that Kelleher has no conflicts of interest with the potential class members. Further, having reviewed the credentials of those firms that represent Kelleher, namely, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP, and Schatz & Nobel, PC, the court concludes that his counsel is sufficiently qualified, experienced, and able to represent the potential class of plaintiffs. As such, assuming for the purpose of this motion that Kelleher's unchallenged assertions are true, the court concludes that Kelleher is able to satisfy both the typicality and adequacy of representation requirements of Rule 23.

Having met this threshold, Kelleher thereby satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii). As such, Kelleher is entitled to the presumption that he is the member of the purported plaintiff class who is most capable of adequately representing the interests of the class members. Having before it no evidence of that would rebut this presumption, the court appoints Robert Kelleher lead plaintiff in this action.

**C. Motion for Approval of Counsel**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*3** Kelleher next moves for the approval of his selection of counsel, as required by 15 U.S.C. § 78u-4(a)(3)(B)(v). This motion is also unopposed. For the reasons set forth above, the court gives its approval to Kelleher's selection of counsel, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP, as lead counsel, and Schatz & Nobel, PC, as liaison counsel.

### D. Motion to Lift the Partial Stay on Discovery

### 1. Preservation of Evidence

Finally, Kelleher moves to lift the stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B). Specifically, Kelleher seeks an order that the defendants "produce all documents, transcripts of interviews or testimony, and any other information provided to or received from" the parties in a separate action in Delaware state court, namely, *Valassis Communications, Inc. v. ADVO, Inc.,* No. 23-83-N (Del. Ch.2006). Kelleher first argues that lifting the stay is necessary to prevent the destruction of evidence by third parties, a scenario which Kelleher characterizes as a "very real possibility."

The defendants oppose the motion, and respond that Kelleher "has not demonstrated that exceptional circumstances exist" as to justify lifting the stay. Specifically, the defendants argue that because they have fulfilled their obligations to safeguard evidence, lifting the stay on discovery is not necessary.

Pursuant to PSLRA, "[i]n any private action arising under [the Securities Exchange Act of 1934, 15 U.S.C. § 78a*et seq.*], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."15 U.S.C. § 78u-4(b)(3)(B)."[T]he automatic stay provision of the Act is triggered by the mere indication by [the]

defense of its intention to file a motion to dismiss."*In re Carnegie Int'l Corp. Sec. Litig.,* 107 F.Supp.2d 676, 683 (D.Md.2000).

Accordingly, where, as here, the defendants have indicated their intention to bring a motion to dismiss,[FN1] all discovery is stayed absent one of two exceptional circumstances. Specifically, the court may lift the stay only when "particularized discovery is necessary" to either: 1) preserve evidence; or 2) prevent undue prejudice. 15 U.S.C. § 78u-4 (b)(3)(B).

> FN1. On October 31, 2006, the parties jointly filed a "Stipulation and Initial Rule 26(f) Report" (document no. 10) which states that the defendants "presently intend to file a motion to dismiss...."

"A party alleging that discovery is 'necessary to preserve evidence' must present more than mere 'generalizations of fading memories and allegations of possible loss or destruction.' " *Sarantakis v. Gruttadauria,* No. 02 C 1609, 2002 U.S. Dist. LEXIS 14349, at \*5-6 (D. Ill. Aug 2, 2002) (quoting *In re Fluor Corp. Sec. Litig.,* SA CV 97-734 AHS (Eex), 1999 U.S. Dist. LEXIS 22128, at \*3 (C.D.Cal. Jan. 15, 1999)). "The movant is required to make a specific showing that 'the loss of evidence is imminent as opposed to merely speculative.' " *Sarantakis,*2002 U.S. Dist. LEXIS 14349, at \*6 (quoting *In re CFS-Related Sec. Fraud Litig.,* 179 F.Supp.2d 1260, 1265 (N.D.Okla.2001)). "The sole example proffered by Congress as to what justifies lifting the stay is 'the terminal illness of an important witness,' which might 'necessitate the deposition of the witness prior to ruling on the motion to dismiss.' " *Faulkner v. Verizon Communications, Inc.,* 156 F.Supp.2d 384, 402 (S.D.N.Y.2001) (citation omitted).

**\*4** Kelleher has failed to establish that lifting the stay is necessary to preserve evidence. His allusions to the possibility of third parties failing to preserve documents is ultimately speculative, and fails to demonstrate that the destruction of evidence is im-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

minent. While the court does not foreclose the possibility of lifting the stay in the future to preserve evidence, based on the submissions of the parties, the court concludes that lifting the stay is not presently necessary.

## 2. Prevention of Undue Prejudice

Kelleher next argues that lifting the stay is necessary to avoid "undue prejudice." Specifically, he contends that the stay on discovery will forestall him from finding "ammunition for an amended federal securities complaint" and from making "informed decisions about litigation strategy...."

The defendants respond that "the plaintiff's wish to make better strategic litigation decisions does not constitute undue prejudice."They note that before the court can lift the stay, Kelleher must demonstrate not just prejudice, but "undue prejudice." Moreover, they argue that Kelleher's inability to presently conduct discovery is a routine situation in securities litigation, and does not merit the extraordinary remedy requested.

The court agrees. Although the Second Circuit has not provided guidance as to that which constitutes "undue prejudice" in the context of a PSLRA discovery stay, various district courts in this circuit have addressed the issue, and have stated that undue prejudice is "improper or unfair treatment amounting to something less than irreparable harm."*E.g. In re Vivendi Universal, S.A., Sec. Litig.,* 381 F.Supp.2d 129, 130 (S.D.N.Y.2003) (citation omitted). A plaintiff's "inability to gather evidence ... to plan a litigation strategy [however,] is not evidence of undue prejudice."*In re Refco, Inc. Sec. Litig.,* No. 05 Civ. 8626, 2006 U.S. Dist. LEXIS 55639, at \*6 (S.D.N.Y. Aug. 8, 2006)."This is because 'delay is an inherent part of every stay of discovery required by the PSLRA.' " *In re Smith Barney Transfer Agent Litig.,* No. 05 Civ. 7583, 2006 U.S. Dist. LEXIS 42646, at \*2 (S.D.N.Y. June 26, 2006), quoting *In re Initial Pub. Offering Litig.,* 236 F.Supp.2d 286, 287 (S.D.N.Y.2002)).

While Kelleher's desire to begin discovery to better craft an amended complaint and plan his case is understandable, the frustration of that desire is neither improper nor unfair, but rather a routine matter of federal securities law.[FN2]As such, the court concludes that Kelleher has not demonstrated that he will suffer undue prejudice if the stay is not lifted. Therefore, the motion to lift the discovery stay is denied.[FN3]Accordingly, the defendants' motion for leave to file a surreply in opposition to the motion to lift the discovery stay is denied, as moot.

> FN2. Kelleher also suggests that the stay will shield the defendants from liability. As Kelleher does not substantiate this argument, the court concludes that it is without merit.

> FN3. Kelleher also contends that lifting the stay will not be burdensome to the defendants, an assertion which the defendants deny. As the impact of discovery on the defendants is not material under 15 U.S.C. § 78u-4(b)(3)(B), the court does not resolve this issue.

### CONCLUSION:

For the foregoing reasons, Kelleher's motions for consolidation, appointment as lead plaintiff, and approval of counsel (document no. 33) are GRANTED. Kelleher's motion to lift the stay on discovery (document no. 20), and the defendants' motion for leave to file a surreply in opposition to the motion to lift the stay (document no. 39) are DENIED. The clerk shall file this ruling in the dockets of each of the underlying cases of this consolidated action, specifically, *Kelleher v. ADVO, Inc.,* Corn 3:06CV01422(AVC), *Coronel v. ADVO, Inc.,* 3:06CV01457(AVC), and *Field v. ADVO, Inc.,* 3:06CV01481(AVC).

**\*5** It is so ordered.

D.Conn.,2007.
Kelleher v. ADVO, Inc.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 413268 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 413268)**

Callahan v. Unisource Worldwide, Inc.
D.Conn.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
William E. CALLAHAN, Plaintiff,
v.
UNISOURCE WORLDWIDE, INC., et al., Defend-
ants.
**No. Civ.A. 3:01CV1205CFD.**

Feb. 24, 2004.

Andrew B. Bowman, Law Offices Of Andrew Bow-
man, Westport, CT, for Plaintiff.
Felix J. Springer, Day, Berry & Howard-Htfd-CT,
Patrick M. Fahey, Robert L. Wyld, Shipman &
Goodwin, Hartford, CT, Jennifer L. Sachs, Day,
Berry & Howard, Stamford, CT, Rayne Rasty, At-
lanta, GA, Joseph J. Costello, Kay Kyungsun Yu,
Susan Elizabeth Hamilton, Morgan, Lewis &
Bockius LLP, Philadelphia, PA, for Defendants.

*RULING*

DRONEY, J.

**\*1** Pending before the Court are the following mo-
tions: plaintiff's motion for leave to file amended
complaint [Doc. # 40], plaintiff's motion to quash
[Doc. # 44], defendants' motion to quash [Doc. #
47], defendants' motion for permission to file mo-
tion and memorandum for partial summary judg-
ment [Doc. # 50], plaintiffs' motion to consolidate
for discovery purposes [Doc. # 53], plaintiff's mo-
tion to compel [Doc. # 55], plaintiff's motion for
extension of time [Doc. # 56], and defendants' mo-
tion for extension of time [Doc. # 62].

*I. Motion for Leave to File Amended Complaint
[Doc. # 40]*

The plaintiff filed a motion for leave to file an
amended complaint to add an ERISA count. In sup-
port of his motion, the plaintiff argues that this ad-

ded count is similar to the ERISA count in the case
of *Paneccasio v. Unisource Worldwide, et al,*
3:01CV2065(CFD), which has virtually identical
defendants and counsel. He also argued that leave
to file the amendment had been anticipated by the
parties since this Court's ruling on motions to dis-
miss on March 27, 2003. Finally, he argued that
there is no prejudice to the defendants by permit-
ting the amended complaint.

*a. Standard*

A motion to amend is governed by Rule 15 of the
Federal Rules of Civil Procedure. Rule 15(a)
provides that "a party may amend the party's plead-
ing only by leave of the court or by written consent
of the adverse party; and leave shall be freely given
when justice so requires."

A motion for leave to amend the complaint can be
denied, however, if the defendant demonstrates un-
due delay in filing the amended complaint, undue
prejudice if the amended complaint is permitted, or
the futility of the amendment. *Foman v. Davis,* 371
U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222
(1962)."Mere delay, however, absent a showing of
bad faith or undue prejudice, does not provide a
basis for a district court to deny the right to
amend."*State Teachers Ret. Bd. v. Fluor Corp.,* 654
F.2d 843, 856 (2d Cir.1981). In order to be con-
sidered futile, the complaint as amended would fail
to withstand a motion to dismiss for failure to state
a claim. *Dougherty v. Town of North Hempstead
Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d
Cir.2002).

Where a scheduling order has been entered, as is
the case here, the lenient standard under Rule 15,
which provides that leave to amend "shall be freely
given," must be balanced against the requirement
under Rule 16(b) of the Federal Rules of Civil Pro-
cedure that the Court's scheduling order "shall not
be modified except upon a showing of good

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 2
Not Reported in F.Supp.2d, 2004 WL 413268 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 413268)**

*Grochowski v. Phoenix Const.,* 318 F.3d 80, 86 (2d Cir.2003) (citing *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339 (2d Cir.2000)). "A finding of good cause depends on the diligence of the moving party." *Id.* (citations omitted).

### b. Discussion

The Court's scheduling order of February 25, 2002 permitted the plaintiff to file an amended complaint within 30 days of the Court's ruling on the motions to dismiss on March 27, 2003, which was April 27, 2003. However, the plaintiff filed the motion for leave to amend the complaint on August 8, 2003. Although plaintiff's counsel did not fully explain his reason for the delay in filing the motion, in plaintiff's motion for extension of time [Doc. # 56], Attorney Bowman asserted that the extension of time is sought due to his extraordinary trial commitments over the past eight months in the *United States v. Giordano* federal criminal trial. In light of plaintiff's counsel's trial commitments in that case, the Court finds good cause for the delay.

**\*2** In addition, the Court concludes that the allegations of the proposed amended complaint are sufficient to withstand a motion to dismiss for failure to state a claim. Thus, the proposed amendment is not futile.[FN1] Finally, the Court finds that the defendants will suffer minimal prejudice in light of their involvement in discovery in the Paneccasio case. Accordingly, the motion for leave to file amended complaint [Doc. # 40] is GRANTED.

> FN1. This is without prejudice to the defendants filing a motion for summary judgment on those issues.

### II. Motion to Consolidate for Discovery Purposes [Doc. # 53]

The plaintiff filed a motion to consolidate with the case of *Paneccasio v. Unisource Worldwide, et al,* 3:01CV2065(CFD) for discovery purposes based on the similarities in their two cases-common causes of action, common defendants, and common witnesses.

A motion to consolidate is governed by Rule 42(a) of the Federal Rules of Civil Procedure. Rule 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court ... it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

Here, both *Callahan v. Unisource Worldwide, et al,* 3:01CV1205 and *Paneccasio v. Unisource Worldwide, et al,* 3:01CV2065(CFD) involve allegations of age discrimination under the Age Discrimination in Employment Act, both plaintiffs were employees of Unisource and participants in the 1991 Deferred Compensation Plan, four defendants are common in both cases, the plaintiffs are represented by the same counsel, and the defendants are represented by the same counsel. In addition, both cases are at the same stage in discovery. As there are common factual and legal issues in these two cases, plaintiff's motion to consolidate for discovery purposes [Doc. # 53] is GRANTED.

### III. Other Pending Motions [Docs. # 44, 47, 50, 55, 56, 62]

Plaintiff's motion to quash subpoena duces tecum [Doc. # 44] is DENIED AS MOOT. Defendants' motion to quash [Doc. # 47] is DENIED. Defendants' motion for permission to file motion for partial summary judgment [Doc. # 50] is DENIED without prejudice to renewal upon completion of discovery. Plaintiff's motion to compel [Doc. # 55] is GRANTED. Plaintiff's motion for extension of time [Doc. # 56] is GRANTED, AS MODIFIED: discovery by all parties must be completed by April 30, 2004. Defendants' motion for extension of time [Doc. # 62] is GRANTED, absent objection.

SO ORDERED.

D.Conn.,2004.
Callahan v. Unisource Worldwide, Inc.
Not Reported in F.Supp.2d, 2004 WL 413268

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| S&E QUICK LUBE DISTRIBUTORS, INC., on behalf of itself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No.: 3:08-cv-00475 ) ) |
| CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION PRODUCTS, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC., UNITED COMPONENTS, INC., and THE CARLYLE GROUP, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

*(additional caption on following page)*

### DECLARATION OF BERNARD PERSKY IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE AND COORDINATE ACTIONS AND FOR APPOINTMENT OF INTERIM CLASS COUNSEL

BARJAN, LLC, on behalf of itself and all others )
similarly situated, )
)
　　　　　　　　　　　　Plaintiff, )
) Case No.: 3:08-cv-00534
　　　vs. )
)
CHAMPION LABORATORIES, INC., )
PUROLATOR FILTERS N.A. L.L.C., )
HONEYWELL INTERNATIONAL INC., WIX )
FILTRATION PRODUCTS, CUMMINS )
FILTRATION INC., THE DONALDSON )
COMPANY, BALDWIN FILTERS INC., BOSCH )
U.S.A., MANN + HUMMEL U.S.A., INC., )
ARVINMERITOR, INC., and UNITED )
COMPONENTS, INC., )
)
　　　　　　　　　　　　Defendants. )
_____/

I, Bernard Persky, hereby declare as follows:

　　　　1.　　　I am over the age of 18, of sound mind, and am fully competent to make this

declaration.

　　　　2.　　　I am a Partner with the law firm of Labaton Sucharow LLP and serve as counsel

for plaintiffs in the above-entitled actions.  I respectfully submit this Declaration in Support of

Plaintiffs' Motion to Consolidate and Coordinate Actions and for Appointment of Interim Class

Counsel.

　　　　3.　　　Attached as Exhibit A is a true and correct copy of a table called "Summary of

Cases Filed in District of Connecticut" which summarizes the vehicle filters antitrust cases filed

in this District to date.

4.      Attached as Exhibit B is a true and correct copy of Labaton Sucharow LLP's firm resume.

5.      Attached as Exhibit C is a true and correct copy of excerpts from two articles from *The National Law Journal* concerning Labaton Sucharow LLP.

6.      Attached as Exhibit D is a true and correct copy of Updike Kelly & Spellacy, P.C.'s firm resume.

I declare, under penalty of perjury pursuant to the laws of the United States, that the foregoing is true.


Executed this 24th day of April, 2008, in New York, New York.



BERNARD PERSKY

## Summary of Cases Filed in District of Connecticut

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiff:**<br>S&E Quick Lube Distributors, Inc.<br>**Defendants:**<br>Champion Laboratories, Inc., Purolator Filters N.A. L.L.C., Honeywell International Inc., Wix Filtration Prods., Cummins Filtration Inc., The Donaldson Co., Baldwin Filters Inc., Bosch U.S.A., Mann + Hummel U.S.A., Inc., ArvinMeritor, Inc., and United Components, Inc. | Connecticut | 3:08-cv-00475 | Janet Bond Arterton |
| **Plaintiff:**<br>Flash Sales, Inc.<br>**Defendants:**<br>Champion Laboratories, Inc., Purolator Filters N.A. L.L.C., Honeywell International Inc., Wix Filtration Prods., Cummins Filtration Inc., The Donaldson Co., Baldwin Filters Inc., Bosch U.S.A., Mann + Hummel U.S.A., Inc., ArvinMeritor, Inc., and United Components, Inc. | Connecticut | 3:08-cv-00512 | Christopher F. Droney |
| **Plaintiff:**<br>William C. Bruene, d/b/a Lone Star Lube<br>**Defendants:**<br>Champion Laboratories, Inc., Purolator Filters N.A. L.L.C., Honeywell International Inc., Wix Filtration Prods., Cummins Filtration Inc., The Donaldson Co., Baldwin Filters Inc., Bosch U.S.A., Mann + Hummel U.S.A., Inc., ArvinMeritor, Inc., and United Components, Inc. | Connecticut | 3:08-cv-00522 | Stefan R. Underhill |

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiff:**<br>T.D.S. Company d/b/a TWI Auto Parts & Supplies<br>**Defendants:**<br>Champion Laboratories, Inc., Purolator Filters N.A. L.L.C., Honeywell International Inc., Wix Filtration Prods., Cummins Filtration Inc., The Donaldson Co., Baldwin Filters Inc., Bosch U.S.A., Mann + Hummel U.S.A., Inc., ArvinMeritor, Inc., and United Components, Inc. | Connecticut | 3:08-cv-00528 | Mark R. Kravitz |
| **Plaintiff:**<br>Barjan, LLC<br>**Defendants:**<br>Champion Laboratories, Inc., Purolator Filters N.A. L.L.C., Honeywell International Inc., Wix Filtration Prods., Cummins Filtration Inc., The Donaldson Co., Baldwin Filters Inc., Bosch U.S.A., Mann + Hummel U.S.A., Inc., ArvinMeritor, Inc., and United Components, Inc. | Connecticut | 3:08-cv-00534 | Janet Bond Arterton |

**Exhibit B**

**Labaton Sucharow**

**RESUME OF**

**LABATON SUCHAROW LLP**

**ANTITRUST PRACTICE GROUP**

# THE FIRM AND ITS ACHIEVEMENTS

## Table of Contents

Antitrust Practice Group ................................................................................................. 1

Major Recoveries In Antitrust Actions .......................................................................... 1

Court Commentary About The Firm's Antitrust Practice ................................................ 2

Current Lead Or Co-Lead Counsel Appointments ......................................................... 3

Other Major Pending Antitrust Cases ............................................................................ 6

Significant Settlements In Which The Firm Played A Major Role .................................. 8

The Firm's Role In Advancing Corporate Governance ................................................ 10

Attorneys at Labaton Sucharow ................................................................................... 12

     LAWRENCE A. SUCHAROW, CHAIRMAN ........................................................ 12

     BERNARD PERSKY, PARTNER ........................................................................ 14

     THOMAS A. DUBBS, PARTNER ...................................................................... 15

     HOLLIS L. SALZMAN, PARTNER ..................................................................... 16

     CHRISTOPHER J. MCDONALD, PARTNER ....................................................... 18

     RICHARD T. JOFFE, OF COUNSEL .................................................................. 19

     GREGORY ASCIOLLA, ASSOCIATE .................................................................. 20

     KELLIE SAFAR LERNER, ASSOCIATE .............................................................. 21

     MICHAEL W. STOCKER, ASSOCIATE .............................................................. 22

     MORISSA FALK, ASSOCIATE .......................................................................... 23

     VICKY KU, ASSOCIATE .................................................................................. 23

     YOKO GOTO, ASSOCIATE .............................................................................. 24

     BENJAMIN D. BIANCO, ASSOCIATE ................................................................ 24

Founded in 1963, Labaton Sucharow LLP is an internationally respected law firm with more than 60 attorneys and a professional staff that includes certified public accountants, financial analysts, e-discovery specialists and investigators with extensive private sector and federal law enforcement experience.  The Firm is based in New York City and has relationships throughout Europe.

Labaton Sucharow's experienced antitrust counsel have engaged in major complex antitrust, securities, consumer, products liability and RICO class action litigation throughout the United States involving commercial activities ranging from trading derivatives (copper, natural gas and crude oil futures, equity options), to supplying inputs to production and related services (industrial chemicals, food additives, paper, resins, vitamins, ocean freight shipping), to selling finished goods (food products, prescription drugs), to salary disputes.

Labaton Sucharow is also known and respected for its Investor Protection Litigation Group, which offers comprehensive services for our institutional investor clients and has recovered, through trial and settlement, more than $3 billion for the benefit of investors who have been victimized by such diverse schemes as stock price manipulation, mismanagement, and fraudulent offerings of securities.  In addition to obtaining monetary recoveries for injured investors, the Group regularly secures corporate governance reforms to meaningfully change the way that boards of directors and management of defendant companies operate, thus minimizing the likelihood that perpetrators of securities fraud will repeat their wrongful conduct.

Visit our website at **www.labaton.com** for more information about our Firm.

# ANTITRUST PRACTICE GROUP

The Firm's Antitrust Practice Group represents businesses, unions and consumers in class actions to combat price-fixing, monopolization, bid-rigging and other anticompetitive or unfair business practices. Our clients include both "direct" purchasers with federal antitrust claims and "indirect" purchasers with state law claims.

The Firm's pioneering efforts in antitrust litigation are exemplified by its having long been on the front lines in the struggle to control the rising cost of prescription pharmaceuticals. In 1996, in the *In re Brand Name Prescription Drug Litigation*, Labaton Sucharow obtained a $65 million settlement on behalf of consumers. In addition to obtaining this substantial recovery, the Firm secured Court approval to use settlement funds to subsidize approximately one million prescriptions for low-income patients at community health centers in eleven states. Since then, the Firm has recovered almost $1 billion for prescription drug purchasers injured by pharmaceutical company misconduct.

# MAJOR RECOVERIES IN ANTITRUST ACTIONS

As Lead or Co-Lead Counsel, Labaton Sucharow's Antitrust Practice Group has achieved many outstanding results. Recent (2000 - 2007) highlights include the following:

- $101 million in settlements on behalf of a class of NYMEX natural gas futures traders injured by defendant energy companies' alleged manipulation of published price indices. This is the second-largest class action commodities manipulation recovery on record. *In re Natural Gas Commodity Litigation*, C.A. No. 1:03-cv-06186 (VM) (S.D.N.Y.).

- $47 million in settlements on behalf of a class of equity options purchasers injured by an alleged scheme to restrict the exchange listing of equity options. *In re Stock Exchanges Options Trading Antitrust Litigation*, MDL No. 1283; C.A. No. 1:99-cv-00962 (RCC) (S.D.N.Y.).

- $90 million settlement on behalf of third-party payors (union health and welfare funds and insurers) nationwide, and consumers in certain states, for claims that Bristol-Myers Squibb engaged in monopolistic and anticompetitive conduct in marketing BuSpar, an anti-anxiety

drug. *In re Buspirone Antitrust Litigation*, MDL No. 1413; C.A. No. 1:01-md-01413 (JGK) (S.D.N.Y.).

- $135.4 million in settlements on behalf of consumers and third-party payors nationwide for claims that Mylan Laboratories, Inc. implemented unlawful and anticompetitive price increases for generic versions of the anti-anxiety drugs Lorazepam and Clorazepate. *In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290; C.A. No. 1:99-cv-01082 (TFH) (D.D.C.).

- $44.5 million settlement  on behalf of consumers and third-party payors for claims that DuPont Pharmaceuticals Company unlawfully suppressed generic competition for Coumadin, a blood-thinning drug.  *In re Warfarin Sodium Antitrust Litigation*, MDL No. 1232; C.A. No. 1:98-md-01232 (SLR) (D. Del.).

- $18 million in settlements of price fixing and market allocation claims against Pfizer, Inc. and others on behalf of businesses that directly purchased the food additives Maltol and Sodium Erythorbate.  *In re Maltol Antitrust Litigation*, C.A. No. 1:99-cv-05931 (TPG) (S.D.N.Y.).

- Almost $90 million in settlements in California state court  on behalf of business purchasers of copper products harmed by the alleged unlawful inflation of copper prices by Sumitomo Corporation and others.  *Heliotrope General, Inc. v. Credit Lyonnais Rouse, Ltd., et al.*, C.A. No.  GIC749280 (JMB) (Superior Court, County of San Diego, California).

## COURT COMMENTARY ABOUT THE FIRM'S ANTITRUST PRACTICE

- *"I think the lawyering in this case is most commendable…[Counsel] have accorded themselves in a manner that allows us to be proud of the profession."*

    — Judge Myron S. Greenberg

- *"This Court has been helped along every step of the way by some outstanding lawyering… [Y]ou can hardly say that there has been anything but five star attorneys involved in this case."*

    — Judge Moria G. Krueger

- *"I'll join my learned colleagues…in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity."*

    — Judge Carl O. Bradford

*In re Brand Name Prescription Drug Litigation* settlement comments from the bench.  Courts in ten states and the District of Columbia approved almost $65 million in cash settlements on behalf of consumers who purchased brand-name drugs at retail from brand name prescription drug

manufacturers. Judges Greenberg, Krueger and Bradford oversaw, respectively, the Minnesota, Wisconsin and Maine actions. *See Kerr v. Abbott Laboratories*, C.A. No. 96-2837 (MSG) (4th Judicial District, Hennepin County, Minnesota); *Scholfield v. Abbott Laboratories, et al.*, C.A. No. 96-cv-460 (MGA) (Circuit Court, Dane County, Wisconsin), *Karofsky v. Abbott Laboratories, et al.*, C.A. No. cv-95-1009 (COB) (Superior Court, Cumberland County, Maine).

- *"The class counsel are well-qualified to litigate this type of complex class action, and they showed their effectiveness in the case at bar through the favorable cash settlement they were able to obtain."*

  — Chief Judge Sue L. Robinson

*In re Warfarin Sodium Antitrust Litigation*, MDL 1232; C.A. No. 1:98-md-01282 (SLR) (D. Del.) (approving $44.5 million cash settlement).

- *"Let me say that the lawyers in this case have done a stupendous job.  They really have."*

  — Judge John Koeltl

*In Re Buspirone Antitrust Litigation*, MDL No. 1413; C.A. No. 1:01-md-01413 (JGK) (S.D.N.Y.) (approving $90 million settlement with Bristol-Myers Squibb).

## CURRENT LEAD OR CO-LEAD COUNSEL APPOINTMENTS

### IN RE MARINE HOSES ANTITRUST LITIGATION
### MDL NO. 1888 (S.D. FLA.)

In February 2008, Labaton Sucharow LLP was appointed Co-Lead Counsel representing plaintiffs who allege that several manufacturers of marine hoses entered into a global conspiracy to fix prices and allocate markets in order to suppress and eliminate competition for sales of marine hoses in the United States and elsewhere, in violation of the federal antitrust laws. A Consolidated Amended Complaint will be filed in March 2008.

### IN RE AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION
### C.A. NO. 1:06-MD-01775 (CBA) (E.D.N.Y.)

In November 2006, Labaton Sucharow was appointed co-lead counsel for plaintiffs and a proposed class of businesses and consumers who allege that the defendant airlines participated in a global conspiracy to fix shipment surcharges in the $50 billion airfreight shipping services industry and to allocate customers, routes and territories. The case is still in its early stages; a Consolidated Amended Complaint was filed in February 2007 and the parties are currently awaiting a decision on defendants' motions to dismiss.

*IN RE ABBOTT LABORATORIES ANTITRUST LITIGATION*
*C.A. NO. 4:04-CV-01511-CW (N.D. CAL.)*

Labaton Sucharow has been prosecuting the case as co-lead counsel since 2004, shortly after Abbott raised the price of a key HIV drug, Norvir, by 400%. Since then, the Firm has scored significant victories on behalf of patients with HIV and their insurers.

Norvir is a critical component of an antiretroviral drug "cocktail" used in the treatment of HIV and AIDS; when used in combination treatment, Norvir significantly boosts the efficacy of the other HIV/AIDS drugs it is paired with. Abbott is allegedly trying to drive the medical community to either use Abbott's own AIDS treatment combination, called Kaletra (which contains the active ingredient in Norvir), or pay exorbitant amounts for Norvir as a stand alone product. In 2003, Abbott quadrupled the price of Norvir – thus making its use in combination with HIV/AIDS drugs of other manufacturers significantly more expensive – but did not raise the price of Kaletra. Other HIV/AIDS drug cocktails containing Norvir are more effective than Kaletra, so third-party payors such as the Service Employees International Union Health and Welfare Fund – the Firm's client and lead plaintiff – claim they have been forced to pay an unlawful price increase that violates antitrust laws. Despite boycotts by some HIV physicians and investigations launched by several states and a congressional committee, Abbott refused to roll back its anticompetitive price hike.

Thus far Labaton Sucharow has successfully defeated Abbott's motion to dismiss the case, and on July 6, 2006, in a ground-breaking decision, United States District Judge Claudia Wilken denied Abbott's motion for summary judgment. Abbott argued that it owned a patent on the method of using Norvir to boost other AIDS drugs, and that it could legally take steps to prevent consumers from using Norvir with other HIV drugs. In rejecting Abbott's argument the Court made key rulings dealing with the intersection of intellectual property and antitrust law. On June 12, 2007, the Court granted our motion and certified a nationwide class of consumers and third-party payors for injunctive relief and a 48-state class for unjust enrichment damages.

The case, which if successful will preserve legitimate competition in the market for drugs critical to the survival of people living with AIDS, is set to go to trial in August 2008.

*IN RE FOUNDRY RESINS ANTITRUST LITIGATION*
*C.A. NO. 2:04-MD-01638-GLF-MRA (S.D. OHIO)*

Labaton Sucharow has been appointed co-lead counsel for a plaintiff class of direct purchasers who allege that defendant suppliers have illegally conspired to fix prices, rig bids and allocate customers in the market for foundry resins. In late 2005, the Court rejected the motion by a foreign defendant corporation to dismiss claims against it for lack jurisdiction. Plaintiffs' motion for class certification has been granted and merits discovery is ongoing.

*VISTA HEALTHPLAN, INC. v. SANOFI-AVENTIS*
*C.A. NO. 1:06-CV-00226-MHW (S.D. OHIO)*

Labaton Sucharow is Chair of the Executive Committee representing third-party payors and consumers in litigation against pharmaceutical companies Sanofi-Aventis and Bristol-Myers

Squibb and related entities, and Canadian generic pharmaceutical manufacturer Apotex Corporation. Sanofi and Bristol-Myers jointly market Plavix, which is used primarily to treat patients who are at risk for heart attack and strokes. They are accused of instituting sham patent litigations against Apotex and other potential sellers of generic versions of Plavix in an effort to deny purchasers of Plavix the benefits of competition – less expensive generic versions of Plavix. Sanofi and Bristol-Myers also entered into an unlawful and anticompetitive agreement with Apotex, whereby Apotex agreed not to market a generic version of Plavix in exchange for payments from Sanofi and Bristol-Myers. The case is in its very early stages.

## IN RE TRICOR INDIRECT PURCHASER ANTITRUST LITIGATION
## C.A. NO. 1:05-CV-00360 (***) (D. DEL.)

Labaton Sucharow is co-lead counsel for a plaintiff class of third-party payors and consumers against Abbott Laboratories and French pharmaceutical company Fournier. Abbott markets the TriCor brand of prescription cholesterol-lowering drug products in the US pursuant to a license from Fournier, which holds several patents relating to TriCor. Abbott and Fournier are accused of abusing FDA regulations, defrauding the US Patent and Trademark Office and engaging in anticompetitive conduct in the marketplace to deprive doctors and consumers of a meaningful opportunity to choose less expensive generic versions of TriCor. The court denied the defendants' motion to dismiss in May 2006, discovery is ongoing and plaintiffs' motion for class certification is pending.

## ANIMALFEEDS INTERNATIONAL CORP. V. STOLT-NIELSEN SA
## C.A. NO. 06-CV-00420 (JSR) (S.D.N.Y.), APPEAL FILED, NO. 06-3473-CV (2d CIR.)

Labaton Sucharow is co-lead counsel on behalf of a proposed class of direct purchasers of parcel tanker ocean shipping services. Plaintiff alleges that the defendant shipping companies engaged in a global cartel and conspiracy to restrain the world market for parcel tanker shipping services, which caused the plaintiff and the proposed class to pay inflated prices for the transportation of bulk liquid chemicals, edible oils, acids, and other specialty liquids. Many of the defendants have pleaded guilty to the alleged anticompetitive conduct and paid substantial fines. Although plaintiff initially prevailed in its motion to proceed in arbitration as a class action, a district court overruled the unanimous decision of the 3-member arbitration panel. The district court's decision is on appeal to the Second Circuit Court of Appeals. Plaintiff maintains that where a contract requires disputes concerning statutory rights to be resolved in arbitration, plaintiffs must be allowed to seek relief as a class in order to effectively vindicate their rights.

## IN RE CIPROFLOXACIN HYDROCHLORIDE ANTITRUST LITIGATION
## C.A. NO. 05-2863-CV (2d CIR.)

Labaton Sucharow is co-lead counsel for a class of third-party payors and consumers. Defendant, a brand-name drug company, paid a generic competitor about $400 million to settle patent infringement litigation involving a lucrative brand-name drug, Bayer's Cipro® brand antibiotic. The generic competitor had claimed that the brand-name drug company's patent was invalid or unenforceable. A final federal court verdict to that effect would have permitted generic versions of the brand-name product to come to market, resulting in much lower prices for consumers and third-party payors. The brand-name manufacturer paid off the generic

challenger to drop the suit. This phenomenon is known as a "reverse payment" settlement because in ordinary patent infringement cases, it is unheard of for the patent holder to pay the alleged infringer to settle a case; any money paid in settlement usually flows from the infringer to the patent holder. If allowed to stand, brand-name drug companies will continue to pay off rivals who challenge lucrative patents of dubious validity, resulting in continued monopoly-level pricing of essential medicines.

This matter is currently on appeal to the United States Court of Appeals for the Second Circuit.

### IN RE OXYCONTIN ANTITRUST LITIGATION
### C.A. NO. 1:04-MD-01603 (SHS) (S.D.N.Y.)

Labaton Sucharow is co-lead counsel and represents plaintiff third-party payors and consumers in this antitrust and consumer protection class action. Plaintiffs allege that consumers have paid inflated prices for the drug OxyContin® because defendant Purdue Pharma purposely misled the Patent and Trademark Office about the efficacy of OxyContin® in obtaining the patent. Plaintiffs further claim that Purdue initiated sham patent infringement litigation to stave off generic competition and thereby maintain its monopolistic prices. The parties are awaiting a decision on the defendants' motions to dismiss.

### IN RE SEARS, ROEBUCK & CO. TOOLS
### MARKETING AND SALES PRACTICES LITIGATION
### C.A. NO. 1:05-CV-04742 (JFG) (N.D. ILL.)

Labaton Sucharow, as co-lead counsel, represents consumers who allege they were misled into paying a premium for Craftsman tools that were labeled and advertised as high quality products that were "Made in USA." In fact, metal parts of Craftsman tools labeled "Made in USA" were made in Austria, Denmark, China, India, and Mexico. Recently, Labaton Sucharow commenced depositions of current and former high level Sears executives.

## OTHER MAJOR PENDING ANTITRUST CASES

### IN RE PAYMENT CARD INTERCHANGE FEE AND
### MERCHANT DISCOUNT ANTITRUST LITIGATION
### C.A. NO. 1:05-MD-01720 (JG) (E.D.N.Y.)

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents merchants who filed suit against Visa, MasterCard, and their 32 member banks for conspiring to impose exorbitant "interchange fees" – a per-use charge on credit cards, imposed on the retailer. The consolidated cases are currently in the midst of discovery.

### IN RE FUNERAL CONSUMERS ANTITRUST LITIGATION
### C.A. NO. 4:05-CV-03394 (KMH) (S.D. TEX.)

Labaton Sucharow is currently working with other counsel in prosecuting claims that the three largest funeral home chains in the U.S. and the dominant manufacturer of caskets have engaged in a group boycott against independent casket discounters and fixed the prices of caskets at

artificially high levels in violation of state and federal antitrust laws. These unlawful practices are alleged to have suppressed competition in casket sales, forcing that consumers to pay artificially inflated prices for caskets. Plaintiffs' motion for class certification has been briefed and we are awaiting a ruling from the court.

### IN RE NEW MOTOR VEHICLES CANADIAN EXPORT ANTITRUST LITIGATION
### C.A. NO. 2:03-MD-01532 (DBH) (D. ME.)

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents Plaintiffs who allege that the major car manufacturers conspired to prevent lower-priced new cars sold in Canada from being imported into the United States. The effect of the conspiracy was to restrict inter-brand competition within the United States market for new cars, to maintain new car prices in the United States at levels that are significantly higher than prices charged in Canada for the same cars, and to maintain the prices for new cars in the United States at supracompetitive levels. Defendants' Rule 123(f) appeal of the District Court's Class Clarification Order was granted and the parties are awaiting a decision from the United States Court of Appeals for the First Circuit.

### AMERICAN BANANA CO., INC. V. DEL MONTE FRESH PRODUCE COMPANY
### C.A. NO. 1:03-CV-10230-RMB (S.D.N.Y.)

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents direct purchasers of a particular pineapple variety in this litigation. Del Monte, the world's leading seller of pineapples, allegedly obtained a patent for the extra-sweet pineapple by defrauding the U.S. Patent and Trademark Office, and misleadingly used that patent to interfere with competitors and initiate sham litigation against them. The Court recently granted class certification and denied, in part, the defendants' motion to dismiss.

### IN RE DDAVP INDIRECT PURCHASER ANTITRUST LITIGATION
### C.A. NO. 7:05-CV-02237 (CLB) (S.D.N.Y.)

Labaton Sucharow brought this antitrust suit on behalf of a class of consumers and prescription drug benefit providers alleging antitrust claims against Dutch drug company Ferring and U.S. drug company Aventis Pharmaceuticals. The defendants are alleged to have unlawfully maintained their monopoly on the diuretic drug, desmopressin acetate (known as DDAVP), by fraudulently procuring a patent that effectively blocked generic drug manufacturers from coming to market with less expensive generic versions of DDAVP. Labaton Sucharow, as third-party payor allocation counsel, is currently working with other counsel in prosecuting claims on behalf of endpayors who overpaid for DDAVP.

### IN RE HYDROGEN PEROXIDE ANTITRUST LITIGATION
### C.A. NO. 2:05-MD-01682 (SD) (E.D. PA.)

Labaton Sucharow brought direct purchaser antitrust claims against thirteen of the world's leading hydrogen peroxide manufacturers alleging that they formed a cartel that horizontally restrained trade for at least the past decade. Hydrogen peroxide is a versatile industrial chemical widely used by the pulp, paper and textile industries to bleach their products, by municipalities to treat drinking and industrial waste water, and by manufacturers of sodium perborate, which is

used in dishwashing and laundry agents. Several dozen individual actions have been consolidated for pretrial purposes in the United States District Court for the Eastern District of Pennsylvania. Labaton Sucharow is working with other counsel for direct purchasers in the consolidated class cases to prosecute claims against the defendants on behalf of corporations that bought hydrogen peroxide directly from one or more of the defendants. The Court recently rejected the defendants' motion to dismiss the plaintiffs' claims, and certified the class of direct purchasers. Discovery is ongoing.

### IN RE NEURONTIN ANTITRUST LITIGATION
### MDL NO. 1479; C.A. NO. 2:02-CV-01390 (FSH) (D.N.J.)

This case arises from Warner-Lambert's alleged abuse of the patent process in order to maintain a monopoly on a drug long past the original patent term. Gabapentin, sold under the brand name Neurontin, was approved by the FDA in 1993, and it is alleged that the last legitimately applicable patent expired on January 16, 2000. No generic formulations for Neurontin were launched, however, until October 8, 2004, when they were marketed "at risk" during pending patent litigation. Labaton Sucharow is third-party payor allocation counsel. Plaintiffs will shortly file an amended complaint and begin discovery.

## SIGNIFICANT SETTLEMENTS IN WHICH
## THE FIRM PLAYED A MAJOR ROLE

### IN RE MICROCRYSTALLINE CELLULOSE ANTITRUST LITIGATION
### C.A. NO. 2:10-MD-01402 (TNO) (E.D. PA.)

Labaton Sucharow represented direct purchasers of microcrystalline cellulose, a natural substance derived from the pulp of wood and often used as a safe filler for tablets and to enhance certain desirable qualities in common food products such as fat reduction or fiber enhancement. FMC Corporation and Asahi Chemical Industry Co, Ltd. were accused of entering into agreements to attempt to corner the market and restrain competition for the manufacture and sale of this product, resulting in higher prices. In 2006, the court approved a settlement of the case of over $50 million.

### IN RE POLYCHLOROPRENE RUBBER ANTITRUST LITIGATION
### C.A. NO. 3:05-MD-01642 (SRU) (D. CONN.)

Labaton Sucharow represented a class of direct purchasers of Neoprene, a synthetic rubber product. Due to defendants' conspiracy to raise, fix, maintain and/or stabilize prices of Neoprene, direct purchasers were forced to pay artificially inflated prices for Neoprene. Labaton Sucharow acted as Settlement Counsel in the action and allocation counsel in the proceedings concerning the allocation of the Neoprene case's share of Bayer's overall settlement in the Rubber Chemicals, Neoprene, and EPDM antitrust cases. The settlements were approved in 2006.

### RELAFEN ANTITRUST LITIGATION
### C.A. No. 1:01-CV-12222 (WGY) (D. Mass.)

In 2002, Labaton Sucharow filed a class action on behalf of direct purchasers (e.g. wholesalers and distributors) against GlaxoSmithKline Corporation (GSK) and its predecessors. The suit alleged that GSK fraudulently obtained a patent to prevent a generic version of Relafen® from coming to the market. Relafen® is an anti-inflammatory drug used in the treatment of arthritis, rheumatism, gout, tendonitis and menstrual cramps. The parties agreed to a $175 million settlement, which was finally approved by the Court on April 9, 2004. The Firm served as Co-Chair of the Discovery Committee.

### RYAN-HOUSE V. GLAXOSMITHKLINE PLC
### C.A. No. 2:02-CV-0442 (HCM) (E.D. VA.)

Labaton Sucharow represented a class of prescription drug benefit providers and consumers who alleged that GlaxoSmithKline misled the U.S. Patent and Trademark Office into issuing "evergreening" patents to protect Augmentin® from competition from generic drug substitutes. In 2005, the court approved a settlement of $29 million. The Firm served as third-party payor allocation counsel.

### NICHOLS V. SMITHKLINE BEECHAM CORPORATION
### C.A. NO. 2:00-CV-06222 (JP) (E.D. PA.)

Labaton Sucharow represented a class of consumers and prescription drug benefit providers who overpaid for the drug Paxil, a commonly prescribed medication used to treat depression. Plaintiffs alleged that GlaxoSmithKline monopolized the market for Paxil and its generic bioequivalents, by filing serial sham litigations intended to block lower-priced generic competitors. In April 2005, the court approved a $65 million settlement. The Firm served as third-party payor allocation counsel.

### IN RE VITAMIN PRODUCTS ANTITRUST LITIGATION
### CASE NO. 96-CV-0460 (WISC. CIRC. CT. AND OTHER STATE COURTS)

Labaton Sucharow represents plaintiffs who alleged a horizontal price-fixing and market allocation conspiracy among vitamin manufacturers. As a member of the National Executive Committee and as Co-Lead Counsel in the Wisconsin state indirect purchaser case, Labaton Sucharow has recovered over $267.5 million to date on behalf of indirect purchasers of vitamins.

### VISTA HEALTHPLAN, INC. V. BRISTOL-MYERS SQUIBB CO.
### CASE NO. 1:01-CV-01295 (EGS) (D.D.C.)

Bristol-Myers Squibb allegedly listed phony patents with the FDA in order to unlawfully extend its monopoly for the anti-cancer drug, Taxol. Labaton Sucharow served as sub-class co-lead counsel for third-party payors in this litigation, whose claims were settled for over $15 million. The Firm served as third-party payor allocation counsel.

*KELLEY SUPPLY, INC. v. EASTMAN CHEMICAL CO.*
*CASE NO. 99-CV-001528 (CIR. CT., DANE CO., WIS.)*
        *-AND-*
*ORLANDO'S BAKERY v. NUTRINOVA NUTRITION SPECIALTIES & FOOD INGREDIENTS, GmbH*
*CASE NO. 99-560-II (CHANCERY COURT, DAVIDSON CO., TENN.)*

Labaton Sucharow, as co-lead counsel, represented a multistate class of purchasers of potassium sorbate, a chemical preservative used in food products, alleging that defendants engaged in a worldwide conspiracy to fix prices for the product. Plaintiffs obtained settlements in Wisconsin and Tennessee totaling over $10.4 million.

## THE FIRM'S ROLE IN ADVANCING CORPORATE GOVERNANCE

Not only is Labaton Sucharow a recognized leader in Antitrust and Securities litigation, the Firm is also committed to corporate governance reform. The Firm is a patron of the John L. Weinberg Center for Corporate Governance of the University of Delaware. The Center provides a forum for business leaders, directors of corporate boards, the legal community, academics, practitioners, graduate and undergraduate students, and others interested in corporate governance issues to meet and exchange ideas. One of Labaton Sucharow's senior partners, Edward Labaton, is a member of the Advisory Committee of The Center. Additionally, Mr. Labaton has for more than 10 years served as a member of the Program Planning Committee for the annual ALI-ABA Corporate Governance Institute, and serves on the Task Force on the Role of Lawyers in Corporate Governance of the Association of the Bar of the City of New York.

On behalf of its institutional and individual investor clients, Labaton Sucharow has achieved some of the largest precedent-setting settlements since the enactment of the Private Securities Litigation Reform Act of 1995, and has helped deter future instances of securities fraud by negotiating substantial corporate governance reforms as a condition of many of its largest settlements.

Because of the depth of their experience and deep commitment to the principles of corporate governance, many Labaton Sucharow partners have served as featured speakers at various symposia and lectures on topics relating to corporate governance and reform.

The Firm's clients have secured meaningful reforms, in addition to substantial monetary recoveries, in significant settlements in securities class actions, such as:

### IN RE WASTE MANAGEMENT, INC. SECURITIES LITIGATION
### C.A. NO. 4:99-CV-02183 (MH) (S.D. TEX.)

Labaton Sucharow, as Lead Class Counsel representing Lead Plaintiff, State of Connecticut Retirement Plans & Trust Funds, caused the Company to fund promotion of a shareholder vote in favor of a binding resolution to declassify its board of directors. The resolution was approved by its shareholders. As a consequence of Labaton Sucharow's efforts, the Company further agreed to amend its Audit Committee charter, which led to its enhanced effectiveness.

### IN RE VESTA INSURANCE GROUP SECURITIES LITIGATION
### C.A. NO. 2:98-CV-01407 (KOB) (N.D. ALA.)

Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, Florida State Board of Administration, caused the Company to adopt provisions requiring that: (i) a majority of its Board members be independent; (ii) at least one independent director be experienced in corporate governance; (iii) the audit, nominating and compensation committees be comprised entirely of independent directors; and (iv) the audit committee comply with the recommendations of a Blue Ribbon Panel on the effectiveness of audit committees.

### IN RE ORBITAL SCIENCES CORPORATION SECURITIES LITIGATION
### C.A. NO. 1:99-CV-00197 (LMB) (E.D. VA.)

Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, New York City Pension Funds, negotiated the implementation of measures concerning the Company's quarterly review of its financial results, the composition, role and responsibilities of its Audit and Finance committee, and the adoption of a Board resolution providing guidelines regarding senior executives' exercise and sale of vested stock options.

### IN RE BRISTOL-MYERS SQUIBB SECURITIES LITIGATION
### C.A. NO. 3:00-CV-01990 (SRC) (D.N.J.)

Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, LongView Collective Investment Fund of the Amalgamated Bank, negotiated noteworthy corporate governance reforms. Bristol-Myers Squibb has agreed to publicly disclose the following information concerning all of its drugs marketed for at least one indication: a description of the clinical study design and methodology; results of the clinical trials; and safety results, including the reporting of adverse events seen during the clinical trials. The disclosures will be posted on BMS's website, www.BMS.com, as well as an industry website, www.clinicalstudyresults.org.

BMS has agreed to post these disclosures for a 10-year period following approval of the settlement, and has further agreed that any modifications to the disclosure protocol must be approved by the Court, at the request of Labaton Sucharow as Lead Counsel, unless the modifications increase the scope of the disclosures. The corporate reform measures obtained in this case exceed the scope of reforms obtained by New York State Attorney General Eliot Spitzer in his settlement of an action against GlaxoSmithKline in that the State Action was limited to disclosures regarding drugs sold in the United States, whereas as a result of the BMS settlement, the Company must post the clinical trial results of drugs marketed throughout the world.

## ATTORNEYS AT LABATON SUCHAROW

Among the attorneys at Labaton Sucharow who are involved in the prosecution of antitrust litigation are Partners Lawrence A. Sucharow, Bernard Persky, Thomas A. Dubbs, Hollis L. Salzman, Christopher J. McDonald, Of Counsel Attorney Richard T. Joffe, and Associates Gregory Asciolla, Kellie Safar-Lerner, Michael W. Stocker, Morissa Falk, Vicky Ku, Yoko Goto and Benjamin D. Bianco. A short description of the qualifications and accomplishments of each follows.

### LAWRENCE A. SUCHAROW, CHAIRMAN                    lsucharow@labaton.com

*Lawrence A. Sucharow*, a nationally recognized leader of the securities class action bar, is the managing partner of Labaton Sucharow. In this capacity, he participates in developing the litigation and settlement strategies for virtually all of the class action cases Labaton Sucharow prosecutes.

For more than three decades, Mr. Sucharow has devoted his practice to counseling clients and prosecuting cases on complex issues involving securities, antitrust, business transaction, product liability, and other class actions. Mr. Sucharow has successfully recovered more than $1 billion on behalf of institutional investors such as state, city, county and union pension funds, shareholders of public companies, bondholders, purchasers of limited partnership interests, purchasers of consumer products and individual investors.

Mr. Sucharow recently obtained $225 million in savings for the class of *In re CNL Resorts, Inc. Securities Litigation*.  In other recently settled actions, Mr. Sucharow undertook a lead role in obtaining benefits for class members of $200 million (*In re Paine Webber Incorporated Limited Partnerships Litigation*); $110 million partial settlement (*In re Prudential Securities Incorporated Limited Partnerships Litigation*); $91 million (*In re Prudential Bache Energy Income Partnerships Securities Litigation*); and more than $92 million (*Shea v. New York Life Insurance Company*).  In approving the *Prudential* settlement, Judge Milton Pollack referred to the efforts of plaintiffs' counsel as "Herculean," stating: "…this case represents a unique recovery – a recovery that does honor to every one of the lawyers on your side of the case."

In addition, in 2002 Mr. Sucharow served as Co-Trial Counsel in a six-week trial of a federal securities law claim on behalf of 18,000 passive investors in the Real Estate Associates limited partnerships.  That trial resulted in an unprecedented $182 million jury verdict.

Mr. Sucharow is a member of the Federal Bar Council's Committee on Second Circuit Courts, and the Federal Courts Committee of the New York County Lawyers' Association.  He is also a member of the Securities Law Committee of the New Jersey State Bar Association and was the founding chairman of the Class Action Committee of the Commercial and Federal Litigation Section of the New York State Bar Association from 1988-1994.  He was honored by his peers by his election to serve as President of the National Association of Shareholder and Consumer Attorneys (NASCAT), a membership organization of approximately 100 law firms which practice complex civil litigation including class actions.

Mr. Sucharow earned a B.B.A., *cum laude*, from Baruch School of the City College of the City University of New York in 1971 and a J.D., *cum laude*, from Brooklyn Law School in 1975.

Mr. Sucharow is admitted to practice in New York and New Jersey.

**BERNARD PERSKY, PARTNER**                                    *bpersky@labaton.com*

**Bernard Persky** is the head of the Firm's Antitrust Practice Group.  For more than 38 years his practice has involved complex business litigation and class actions, primarily antitrust, trade regulation, securities fraud and civil RICO.  Among his peers, he is recognized as a leading antitrust litigator.  He has played a key role in major antitrust class actions that have resulted in monetary recoveries to class members, including consumers and businesses, of well over $1 billion.

In *County of Suffolk v. Long Island Lighting Company*, a case in which Mr. Persky was Co-Lead Trial Counsel, the Second Circuit, in upholding a $400 million class settlement and awarding attorneys' fees to Plaintiff, quoted the trial judge, Honorable Jack B. Weinstein, as stating "counsel [has] done a superb job [and] tried this case as well as I have ever seen any case tried."

Mr. Persky has acted as Co-Lead Counsel in major antitrust class actions, including: *In re Natural Gas Commodity Manipulation Litigation* ($101 million settlement); *In re Warfarin Sodium Antitrust Litigation* ($44.5 million settlement); *In re Buspirone Patent Litigation* ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation* ($135 million settlement); *In re Stock Exchanges Options Antitrust Litigation* ($47 million settlement); *In re Foundry Resins Antitrust Litigation*; *In re TriCor Antitrust Litigation*; *In re Parcel Tanker Shipping Services Antitrust Litigation*; *In re OxyContin Antitrust Litigation* and *In re Energy Transfer Partners Natural Gas Litigation*.

He is a member of the Advisory Board of the American Antitrust Institute and the Executive Committee of the Antitrust Section of the New York State Bar Association and co-author of an article entitled "Antitrust Protections Expanded In New York," *New York Law Journal*.  He has also lectured before bar associations (Indirect Purchaser Antitrust Litigation) and other interested groups (*How Viable Is Hatch Waxman Class Action Litigation: Plaintiffs' Perspective*).

Mr. Persky earned a B.A. from the City College of New York in 1965, graduating Phi Beta Kappa, and received a J.D., *cum laude*, from Harvard Law School in 1968.

He is admitted to practice in New York, before the United States Supreme Court, the United States Courts of Appeals for Second, Third and Fifth Circuits and the United States District Courts for the Southern, Eastern and Northern Districts of New York.

## THOMAS A. DUBBS, PARTNER                                   tdubbs@labaton.com

***Thomas A. Dubbs*** specializes in the representation of institutional investors including pension funds in securities fraud and other types of litigation. A recognized leader in the field, Mr. Dubbs represented the first major private institutional investor to become a lead plaintiff in a class action under the Private Securities Litigation Reform Act.

Mr. Dubbs currently serves as Lead Counsel in the federal securities fraud class actions brought against AIG on behalf of Lead Plaintiff Ohio (comprised of several of Ohio's retirement systems) as well as Lead Counsel for the class and Lead Plaintiff New Mexico (comprised of several of New Mexico's retirement systems) in the securities class actions against St. Paul Travelers Companies, Inc. in relation to the merger between The St. Paul Companies and Travelers Property Casualty Corporation.

A Labaton Sucharow team led by Mr. Dubbs successfully litigated a class action against Bristol-Myers Squibb, which resulted in a settlement of $185 million and major corporate governance reforms.

Mr. Dubbs also led the team of Labaton Sucharow attorneys that represented the Lead Plaintiff, the Florida State Board of Administrators, in the *Vesta Insurance Group* class action. To date, settlements with the Company and its auditor, KPMG, total more than $79 million, which represents more than 37% of the damages sustained by the class.

Most recently, Mr. Dubbs leads the team prosecuting the *In re HealthSouth Securities Litigation* on behalf of the New Mexico State Investment Council, the Educational Retirement Board of New Mexico, and the Michigan Pension Funds, the Court appointed Co-Lead Plaintiffs for stockholders of HealthSouth Corporation. Mr. Dubbs secured a partial settlement of $445 million from HealthSouth over the massive fraud that led to the healthcare provider's collapse and conviction of numerous former employees.

Prior to joining Labaton Sucharow, Mr. Dubbs was Senior Vice President & Senior Litigation Counsel for Kidder, Peabody & Co. where he represented the firm in many class actions, including the *First Executive* and *Orange County* litigations. Before joining Kidder, Mr. Dubbs was head of the litigation department at Hall, McNicol, Hamilton & Clark, where he was the principal partner representing Thomson McKinnon Securities Inc. in litigation matters including class actions such as the *Petro Lewis* and *Baldwin United* litigations.

He frequently lectures to institutional investors and other groups such as the Government Finance Officers Association, the National Conference on Public Employee Retirement Systems and the Council of Institutional Investors. Most recently, Mr. Dubbs spoke at the Ohio Forum on Public Retirement.

Mr. Dubbs received a B.A. and a J.D. from the University of Wisconsin in 1969 and 1974, respectively. In 1971, he earned an M.A. from the Fletcher School of Law and Diplomacy of Tufts University. Mr. Dubbs is a member of the New York State Bar Association and the Association of the Bar of the City of New York. He is admitted to practice in New York.

### HOLLIS L. SALZMAN, PARTNER                                    hsalzman@labaton.com

**Hollis L. Salzman** is a partner in the Firm's Antitrust Practice Group. She represents businesses and consumers in cases involving federal and state antitrust law violations. She is also

involved in the Firm's securities litigation practice group where she represents institutional investors in portfolio monitoring and securities litigation. Some of Ms. Salzman's clients include MARTA and the City of Macon, Georgia.

Ms. Salzman is actively engaged in the prosecution of major antitrust class actions pending throughout the United States. She is presently Co-Lead Counsel in many antitrust cases, including: *In re Abbott Labs Norvir Antitrust Litigation* which is set for trial in June 2008, *In re OxyContin Antitrust Litigation*, *In re Air Cargo Shipping Services Antitrust Litigation* and *Plavix Antitrust Litigation*. She is also actively involved in other pending major antitrust litigations, including *In re Funeral Antitrust Litigation*, *In re Pineapple Antitrust Litigation*, *In re New Motor Vehicles Canadian Export Antitrust Litigation*, *In re Marine Hoses Antitrust Litigation* and *In re Live Rock Concert Antitrust Litigation*.

She also served as Co-Lead Counsel in several antitrust class actions which resulted in extraordinary settlements for consumers and third-party payors. *In re Buspirone Antitrust Litigation* ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation* ($135.4 million on behalf of third-party payors, and $100 million on behalf of consumers in conjunction with the Federal Trade Commission and State Attorneys General actions); also *In re Maltol Antitrust Litigation*, and *Continental Seasonings Inc. v. Pfizer, Inc., et al.*, ($18.45 million on behalf of direct purchasers of chemical food additives). Additionally, she was principally responsible for administering a $65 million settlement with certain brand-name prescription drug manufacturers where their conduct allegedly caused retail pharmacy customers to overpay for their prescription drugs.

Ms. Salzman is a Co-Chair of the New York State Bar Association, Commercial & Federal Litigation Section — Antitrust Committee and is co-author of an article entitled "The State of State

Antitrust Enforcement," NYSBA *NYLitigator*, Winter 2003, Vol. 8, No. 1. She is also a member of the Association of the Bar of the City of New York Antitrust Committee and Women's Antitrust Bar Association. Ms. Salzman also provides *pro bono* representation to indigent and working-poor women in matrimonial and family law matters.

Ms. Salzman earned a B.A. from Boston University in 1987 and a J.D. from Nova University School of Law in 1992. She is admitted to practice in New York, New Jersey and Florida as well as before the United States District Courts for the Southern and Middle Districts of Florida; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Eleventh Circuit.

## CHRISTOPHER J. MCDONALD, PARTNER                    cmcdonald@labaton.com

*Christopher J. McDonald*, a partner in the Firm's Antitrust Practice Group, represents businesses, associations and individuals injured by anticompetitive activities. Mr. McDonald's practice also involves representing institutional investors in securities fraud cases.

Mr. McDonald was part of the team that successfully litigated *In re Bristol-Myers Squibb Securities Litigation*, in which Labaton Sucharow secured a $185 million settlement on behalf of Bristol-Myers Squibb shareholders, as well as meaningful corporate governance reforms. He has also worked on *In re Natural Gas Commodity Litigation*, a case that generated a total of $101 million in settlement funds for a class of traders who purchased, sold or settled New York Mercantile Exchange contracts.

In an ongoing case, *In re TriCor Indirect Purchaser Antitrust Litigation*, Mr. McDonald represents end-payors of the prescription drug TriCor (e.g., union health and welfare funds and consumers), who claim that the drug's manufacturer and U.S. marketer unlawfully impeded the

introduction of lower-priced generic alternatives to TriCor.  Other cases in which Mr. McDonald is currently involved include the *Air Cargo Shipping Services* and *Foundry Resins* antitrust cases.

A litigator for most of his career, Mr. McDonald also has in-house and regulatory experience.  As a senior attorney with a telecommunications company he regularly addressed legal, economic and public policy issues before state public utility commissions.

Mr. McDonald received his undergraduate degree, *cum laude*, from Manhattan College in 1985 and a J.D. from Fordham University School of Law in 1992, where he was on the Law Review.

Mr. McDonald is admitted to practice in New York and before the United States Court of Appeals for the Second Circuit and the United States District Courts for the Southern and Eastern Districts of New York.

## RICHARD T. JOFFE, OF COUNSEL                              rjoffe@labaton.com

*Richard Joffe*'s practice focuses on class action litigation, including securities fraud, antitrust and consumer fraud cases.  Since joining the Firm, Mr. Joffe has represented such varied clients as institutional purchasers of corporate bonds, Wisconsin dairy farmers, and consumers who alleged they were defrauded when they purchased annuities.

Prior to joining Labaton Sucharow, Mr. Joffe was an associate at Gibson, Dunn & Crutcher LLP, where he played a key role in obtaining a dismissal of claims against Merrill Lynch & Co. and a dozen other of America's largest investment banks and brokerage firms, who, in *Friedman v. Salomon/Smith Barney, Inc.*, were alleged to have conspired to fix the prices of initial public offerings.

Mr. Joffe also worked as an associate at Fried, Frank, Harris, Shriver & Jacobson where he defended Goldman Sachs & Co. against allegations of securities fraud and professional negligence. In addition, he obtained a successful settlement for several older women who alleged they were

victims of age and sex discrimination when they were selected for termination by New York City's Health and Hospitals Corporation during a city-wide reduction in force.

He co-authored "Protection Against Contribution and Indemnification Claims" in *Settlement Agreements in Commercial Disputes* (Aspen Law & Business, 2000). He is a member of the Association of the Bar of the City of New York and the American Bar Association.

Mr. Joffe received a J.D. from Columbia Law School in 1993. He earned a Ph.D. from Harvard University in 1984. He earned a B.A., *summa cum laude*, from Columbia University in 1972.

Long before becoming a lawyer, Mr. Joffe was a founding member of the internationally famous rock and roll group, Sha Na Na.

## GREGORY ASCIOLLA, ASSOCIATE                          *gasciolla@labaton.com*

*Gregory Asciolla* focuses his practice on representing consumers and businesses in complex antitrust and commodities class actions. Currently, Mr. Asciolla is representing clients in several antitrust matters involving alleged price-fixing and other anticompetitive practices, including *In re Air Cargo Shipping Services Antitrust Litigation*, *In re Marine Hoses Antitrust Litigation*, and *In re Chocolate Confectionery Antitrust Litigation*. He is also representing clients in several commodities matters involving the alleged manipulation of the prices of natural gas futures and options contracts, including *In re Energy Transfer Partners Natural Gas Litigation* and *In re Amaranth Natural Gas Commodities Litigation*.

Mr. Asciolla has extensive experience in the area of antitrust law. Prior to joining Labaton Sucharow, Mr. Asciolla practiced antitrust litigation and counseling on behalf of clients worldwide at Schulte Roth & Zabel LLP and Morgan Lewis & Bockius LLP. He began his career as an attorney

- 20 -

at the U.S. Department of Justice/Antitrust Division, where he focused on anticompetitive conduct in the healthcare industry.

Mr. Asciolla also has represented clients in the arts in several *pro bono* matters involving art law and intellectual property.

Mr. Asciolla received an A.B., *cum laude*, from Boston College in 1987 and a J.D. from Catholic University of America in 1993.  As a law student, he served as a member of the *Catholic University Law Review* and was the Co-Founder and Executive Editor of the *CommLaw Conspectus: Journal of Communications Law & Policy*.

Mr. Asciolla is admitted to practice in New York, the District of Columbia, and the United States District Courts for the Southern and Eastern Districts of New York.  He is a member of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee.

### KELLIE SAFAR LERNER, ASSOCIATE                           klerner@labaton.com

**Kellie Safar Lerner** focuses her practice on representing consumers, businesses and governmental entities in complex antitrust actions in the pharmaceutical, automotive, chemical and food industries.  Since joining the Firm, Ms. Safar-Lerner has litigated a wide variety of antitrust claims, including price-fixing, unlawful boycotting, monopolization, and monopoly leveraging cases.  Currently, Ms. Safar-Lerner is representing clients in the following cases: *In re Abbott Labs Norvir Antitrust Litigation*, *In re New Motor Vehicles Canadian Export Antitrust Litigation*, and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

She is a member of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee, the Women in Antitrust Committee, and the Federal Bar Council. She has also provided *pro bono* assistance to the Lawyers' Committee for Civil Rights Under Law and the AARP.

Ms. Safar-Lerner obtained a B.A. from Rutgers University in 1999, where she graduated Phi Beta Kappa and with honors. She received a J.D. from Rutgers Law School in 2003. While in law school, she served as Managing Editor of the Rutgers Computer and Technology Law Journal and as a Board Member of the Moot Court Board. She also worked as a Legal Aide in the Antitrust Bureau of the New York Attorney General's Office.

Ms. Safar-Lerner is admitted to practice in New York and New Jersey.

## MICHAEL W. STOCKER, ASSOCIATE                                   *mstocker@labaton.com*

*Michael W. Stocker* represents clients in commercial litigation, with a primary focus on sophisticated class action matters.

Prior to joining Labaton Sucharow, Mr. Stocker worked as a senior associate at Berman DeValerio Pease Tabacco Burt & Pucillo on securities and antitrust class action cases.

Earlier in his career, Mr. Stocker worked as a senior staff attorney with the United States Court of Appeals for the Ninth Circuit, and completed a legal externship with United States Magistrate Judge (now District Judge) Phyllis J. Hamilton of the Northern District of California.

Mr. Stocker has served on the boards of the University of California San Francisco's AIDS Health Project and AIDS Benefits Counselors, and has worked for the Immigrant HIV Assistance Project and the Volunteer Legal Services Program in San Francisco as well as Legal Assistance for Seniors in Oakland, California.

Mr. Stocker earned a B.A. from the University of California, Berkeley, in 1989 and a J.D. from the University of California, Hastings College of Law, in 1995. He is admitted to practice in California as well as before the United States District Courts for the Northern and Central District of California, and the United States Court of Appeals for the Ninth Circuit.

## MORISSA FALK, ASSOCIATE                              mfalk@labaton.com

**Morissa Falk** represents consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices.  Currently, Ms. Falk is representing clients in *In re Air Cargo Shipping Services Antitrust Litigation*, *Funeral Consumers Alliance, et al. v. Service Corporation Int'l et al.*, and *In re Chocolate Confectionery Antitrust Litigation*.

Ms. Falk earned a B.A. from Haverford College in 2003.  She received a J.D. from Brooklyn Law School in 2006, graduating on the Dean's List.  While in law school, Ms. Falk interned at the Office of the New York State Attorney General in the Civil Rights Bureau, various women's rights organizations and the Appellate Division of the Supreme Court for the State of New York.  She also was a member of the Legal Association of Activist Women.

Ms. Falk is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.  She is a member of the Association of the Bar of the City of New York Bioethics Committee, and the New York State Bar Association, Commercial & Federal Litigation Section - Antitrust Committee.

## VICKY KU, ASSOCIATE                                 vku@labaton.com

**Vicky Ku** joined Labaton Sucharow as an associate in the Firm's Antitrust Practice Group, representing consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices.  Currently, Ms. Ku is actively involved in *In re TriCor Indirect Purchaser Antitrust Litigation* and *In re Marine Hoses Antitrust Litigation*.

Ms. Ku obtained her B.A. from California State University, Fullerton in 1997 and earned her J.D. from the Hofstra University School of Law in 2005.  During law school, Ms. Ku interned at the New York State Attorney General's Office in the Antitrust Bureau.  She also was the Managing

Editor of Articles for the *Family Court Review* and published two student notes, including a note for the *Yale Journal of Law and Technology*.

Prior to law school, Ms. Ku worked in the high-tech public relations industry for five years and received numerous awards based on crisis communications plans developed for clients that included Microsoft, Sun Microsystems and Taiwan Semiconductor Manufacturing Corp.

Ms. Ku is admitted to practice in New York and New Jersey. She is a member of the New York State Bar Association.

### YOKO GOTO, ASSOCIATE                                                    *ygoto@labaton.com*

***Yoko Goto*** represents consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices. Currently, Ms. Goto is representing clients in *In re Air Cargo Shipping Services Antitrust Litigation* and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

Ms. Goto earned a B.A. from Hokkaido University (Sapporo, Japan) and an M.A. from Columbia University, Teachers College. She received her J.D. from Brooklyn Law School. While in law school, Ms. Goto interned at the New York City Housing Development Corporation, the Department of Consumer Affairs and the Office of General Counsel for Merrill Lynch.

Ms. Goto is fluent in Japanese and conversational in Chinese.

Ms. Goto is admitted to practice in New York. She is a member of the New York State Bar Association, the Association of the Bar of the City of New York and the New York County Lawyers' Association.

### BENJAMIN D. BIANCO, ASSOCIATE                                       *bbianco@labaton.com*

Benjamin D. Bianco represents businesses, consumers, and governmental entities in complex antitrust class actions.

Prior to joining Labaton Sucharow, Mr. Bianco served as a litigation associate at O'Melveny & Myers LLP, where he practiced complex commercial litigation in federal and state courts, before international arbitration panels, and proceedings before the U.S. Securities and Exchange Commission, with a particular focus on antitrust, insurance, and securities fraud matters. He began his career at Sidley Austin LLP, where he also worked as a litigation associate.

Mr. Bianco earned a B.A. from Gonzaga University in 1999, and a J.D., *cum laude*, from Brooklyn Law School in 2002. During law school, he was a member of the *Journal of Law and Policy*. In addition to being a recipient of the Order of the Barristers Award, he was also Vice President of the Moot Court Honor Society.

Mr. Bianco is admitted to practice in New York and before the United States District Courts for the Southern and Eastern Districts of New York.

**Exhibit C**





## THE NATIONAL LAW JOURNAL — ALM

**Labaton Sucharow**
**Plaintiffs' Hot List 2 Years in a Row!**

### THE NATIONAL LAW JOURNAL

MONDAY, OCTOBER 22, 2007

## THE PLAINTIFFS' HOT LIST

BERGER & MONTAGUE | BERNSTEIN LIEBHARD & LIFSHITZ

BERNSTEIN LITOWITZ | COUGHLIN STOIA

GRANT & EISENHOFER | HAGENS BERMAN SOBOL SHAPIRO

KOREIN TILLERY | **LABATON SUCHAROW** | LIEFF CABRASER

PHILLIPS & COHEN | SCHIFFRIN BARROWAY | SEEGER WEISS

WHATLEY DRAKE & KALLAS

### Labaton Sucharow 2007

Labaton Sucharow, a 60-attorney New York firm, bills itself as "a champion of investor and consumer rights." The firm certainly has distinguished itself in pursuing securities and antitrust class actions, and is helping to fill the void left by the fall of Melvyn Weiss and William Lerach. The firm was scheduled to go to trial on Oct. 22 against communications network company JDS Uniphase Corp. in what could be one of the biggest securities actions since the unpleasantness with WorldCom Inc. American International Group Inc. is also in Labaton Sucharow's rights because of alleged insurance bid rigging, with damages the firm estimates at more than $15 billion.

**NOTEWORTHY CASES 2007:**

■ *In re Mercury Interactive Corp. Securities Litigation*, No. 505-CV-3395-JF (PVT) (N.D. Calif.). Co-lead counsel Joel H. Bernstein and Christopher J. Keller. At approximately $117.5 million, this was the largest settlement agreement to date in an options-backdating case. Labaton Sucharow led the negotiations, drafted the amended complaint, handled the investigation and argued motions.

■ *In re Natural Gas Commodity Litigation*, No. 03-CV-6186 (VM) (S.D.N.Y.). Co-lead counsel Bernard Persky. The $101 million recovery here was the second-largest to date under the Commodity Exchange Act. Among the firm's contributions was overcoming McGraw Hill's constitutional objections to sharing information from its natural gas trading indices. The firm says that material helped prove its case and prompted the settlement.

### Labaton Sucharow

---

## THE NATIONAL LAW JOURNAL — ALM

**Labaton Sucharow**
**Plaintiffs' Hot List 2 Years in a Row!**



### THE NATIONAL LAW JOURNAL

MONDAY, OCTOBER 9, 2006

## THE PLAINTIFFS' HOT LIST

BARON & BUDD

BERNSTEIN, LIEBHARD & LIFSHITZ

BERNSTEIN LITOWITZ BERGER & GROSSMANN

COHEN, MILSTEIN, HAUSFELD & TOLL

HAGENS BERMAN SOBOL SHAPIRO

GIRARD & KEESE

GRANT & EISENHOFER

**LABATON SUCHAROW & RUDOFF**

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS

LIEFF CABRASER HEIMANN & BERNSTEIN

MOTLEY RICE

### Labaton Sucharow 2006

A name change last fall to Labaton Sucharow & Rudoff accompanied this 43-year-old firm's emergence into the top flight of the plaintiffs' bar. The 50-lawyer New York firm captained or co-captained some of the year's most significant class actions.

**NOTEWORTHY CASES 2006:**

■ *In re HealthSouth Corp. Securities Litig.*, No. CV-03-BE-1500-S (N.D. Ala.). Co-lead counsel Thomas A. Dubbs and Jim Johnson, with Lerach Coughlin Stoia Geller Rudman & Robbins, secured a partial settlement of $445 million over the massive fraud that brought about the health care provider's collapse and convictions of 15 former employees.

■ *In re Bristol-Myers Squibb Securities Litig.*, No. 00-1990 (SRC) (D.N.J.). Lead counsel Thomas A. Dubbs and Jim Johnson. Five years of effort produced a $185 million settlement, the largest on record for securities fraud involving the development of a new drug (the hypertension drug Vanlev, ultimately rejected as unsafe by the Food and Drug Administration). The company also agreed to post on its Web site any information critical of any of its drugs.

■ *In re DBB Industries Inc. Class Action Litig.*, No. CV 05-4296 (E.D.N.Y.). Co-lead counsel Christopher J. Keller, with Lerach Coughlin Stoia Geller Rudman & Robbins. The $40 million settlement in this case seems modest compared to some of the others on this list, but involved a company whose high-flying chief executive, David Brook, had thrown his daughter a $10 million party while selling defective body armor to U.S. troops.

Reprinted with permission from the October 9, 2006 and October 22, 2007 editions of THE NATIONAL LAW JOURNAL. © 2007 ALM Properties, Inc. All rights reserved. Further duplication without permission is prohibited. For information, contact 212.545.6111. #005-10-07-0016



### Labaton Sucharow

### Labaton Sucharow



# WHO WE ARE



**Partnering with clients in the business of law**

Founded in 1967, Updike, Kelly & Spellacy, P.C. has grown in size, capabilities and reputation to become recognized as one of the major Connecticut law firms. We have a sophisticated and full-service legal and governmental affairs practice providing comprehensive representation to our clients on a local, regional and national basis. The Firm's founders believed that a modern law firm had to offer its clients more than just a knowledge of the law. A successful law firm needed to be proactive, forward thinking and willing to challenge tradition. It needed to internalize the problems and issues confronting its clients in order to make things happen for its clients. In short, it needed to partner with its clients in the business of law. Today, Updike, Kelly & Spellacy, P.C. remains this kind of law firm with the beliefs of its founders defining the essential qualities and personality of the Firm.

By design, our firm is comprised of attorneys with widely diverse backgrounds, talents, interests and experience. This diversity creates a flexibility that is a pronounced benefit to our clients when large or complex issues dictate more than the traditional approach to problem solving. Our attorneys possess significant experience in their chosen areas of practice and many hold advanced degrees and board certifications as well as experience within the legislative and judicial branches of government. Individually qualified, our attorneys are even more effective as a team when client needs require the collective skills of attorneys practicing in more than one area of law.

From offices in Hartford and New Haven, we serve clients which include individuals, large publicly held corporations as well as medium and small sized businesses, public agencies and private not-for-profit organizations. Our areas of practice are diverse and, on the whole, the Firm handles all the legal needs of most of its clients. We regularly handle some of the largest and most complex transactions and matters in the State of Connecticut. We engage in all of the traditional areas of the law as well as a variety of specialized and emerging practice areas and industry concentrations. Our highly successful trial and appellate practice is among the largest and most diverse in the state. We were one of the first law firms in New England to develop a dedicated Environmental practice group and our recently established Fuel Cell and Alternative Energy practice group continues our tradition of being at the forefront of emerging areas of the law.

Our attorneys recognize the need to invest time and energy in the development of their legal skills and talents. Our attorneys regularly participate in seminars and other presentations and contribute articles to numerous legal and other publications. Our attorneys are also active in community, business and trade organizations and associations such as the Association of Commercial Finance Attorneys, the American Health Lawyers Association, the Connecticut Venture Group, the International Association of Shopping Centers, and the National Association of College and University Attorneys.

We recognize that the needs of many of our clients require involvement in the legislative and regulatory processes. As such, we maintain one of Connecticut's largest and oldest Governmental Affairs practice groups that draws on the substantive experience and knowledge of all of the attorneys within the Firm. We have forged long-standing, working relationships with local, state and national government leaders and are involved with numerous business and community organizations. Our attorneys are known by key decision makers in business and political sectors. More importantly, because our Governmental Affairs practice group is a part of our law firm, our clients obtain the benefit of the conflict of interest and other ethical protections not provided by many other legislative and public affairs practices.

One State Street, Hartford, CT 06123-1277
T: 860.548.2600 • F: 860.548.2680 • www.uks.com

MERITAS LAW FIRMS WORLDWIDE

## UPDIKE, KELLY & SPELLACY, P.C.
*Connecticut's law firm with a worldwide reach*

## WHO WE ARE



In 1990, in anticipation of the economic globalization, we were a founding member of Meritas Law Firms Worldwide, one of the first networks of independent law firms.  Our membership extends the reach of our practice across the United States and around the world through nearly 200 member law firms in more than 60 countries. Meritas maintains member firms in virtually every major city in the United States, in all of the traditional international business centers and in many of the emerging economies around the world.  Each member firm includes English speaking attorneys with long standing relationships in their local markets and are well-versed in local business, legal and social customs.

The practice of law is an exercise in communication, and we strive to maintain clear and interactive avenues of channels of communication with our clients and listen to your needs, views, goals and concerns in the course of our representation.  The Firm gives special attention to the representation of companies with in-house legal counsel and departments.  We are used to working with in-house counsel and structure and manage our engagements in accordance with the specific policies and procedures of our corporate clients.  We understand and appreciate the responsibilities of in-house counsel and our attorneys know their roles as outside counsel.  We believe as a mid-sized firm we can offer greater flexibility and responsiveness to our corporate clients, the potential for fewer conflicts of interest and a more client focused prespective and loyalty.

Our practice areas and industry concentrations are: Administrative; Agriculture and Agribusiness; Appellate; Asbestos; Brownfields Development; Business; Commercial Lending and Banking; Commercial Litigation; Construction; Creditors' Rights and Bankruptcy; Employment; Environmental; Franchise and Distributorship; Fuel Cell and Alternative Energy; Government Guaranteed Lending; Government Affairs; Governmental Investigations; Healthcare; Insurance Coverage; Intellectual Property; Municipal; Product Liability and Toxic Tort; Professional Liability; Property Valuation; Public Finance; Real Estate; Real Estate Finance; Taxation; Trusts and Estates; Utilities and Regulated Industries; Venture Capital and Emerging Companies.

We serve a wide range of clients including local, regional, multinational and non-profit corporations, various political and state subdivisions such as municipalities, regional governments and special purpose authorities, as well as individuals. Cultivating a dynamic synergy across practice areas is one of the key elements to assist our clients in the overall business environment. We recognize and understand the need to assist clients in anticipating and managing risk, while simultaneously finding pragmatic, cost-effective solutions to problems when they arise.

Our clients include: Advanced Radiology Consultants, LLC; Bank of America, N.A., CapitalSource Finance, LLC; CNA Insurance Companies; Citizens Bank; City of Bridgeport; CIGNA; Connecticut Department of Economic and Community Development; Connecticut Clean Energy Fund; Connecticut Innovations, Incorporated; CVS Corporation; Derecktor Shipyards; Encompass Insurance Company; FCR, Inc.; GenCell Corporation; General Growth Properties, Inc.; Habco, Inc.; HEALTHSOUTH Corporation; Howard Hughes Medical Institute; Ironwood Mezzanine Fund, L.P.; Liberty Mutual Insurance Company; The Metropolitan District; New England Development Company; Northeast Utilities; PAETEC Communications, Inc.; Pepperidge Farm, Inc.; Pilot Corporation of America;  Saint Francis Hospital and Medical Center; State of Connecticut Treasurer's Office; Simon Property Group, Inc.; Stonington Behavioral Health, Inc.; TD Banknorth; Tweed-New Haven Airport Authority; UPS Capital Business Credit; Webster Bank, N. A.; and Yale University.

For further information, contact John F. Wolter at 860.548.2645, jwolter@uks.com, or visit us at www.uks.com

BARJAN, LLC, on behalf of itself and all others          )
similarly situated,                                       )
                                                          )
                    Plaintiff,                            )
                                                          )     Case No.: 3:08-cv-00534(JBA)
        vs.                                               )
                                                          )
CHAMPION LABORATORIES, INC.,                              )
PUROLATOR FILTERS N.A. L.L.C.,                            )
HONEYWELL INTERNATIONAL INC., WIX                         )
FILTRATION PRODUCTS, CUMMINS                              )
FILTRATION INC., THE DONALDSON                            )
COMPANY, BALDWIN FILTERS INC., BOSCH                      )
U.S.A., MANN + HUMMEL U.S.A., INC.,                       )
ARVINMERITOR, INC., and UNITED                            )
COMPONENTS, INC.,                                         )
                                                          )
                    Defendants.                           )
_____/

*(additional caption on following page)*


**[PROPOSED] PRETRIAL ORDER CONSOLIDATING AND COORDINATING ACTIONS
AND APPOINTING INTERIM CLASS COUNSEL**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| S&E QUICK LUBE DISTRIBUTORS, INC., on behalf of itself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No.: 3:08-cv-00475(JBA) ) ) |
| CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION PRODUCTS, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC., UNITED COMPONENTS, INC., and THE CARLYLE GROUP, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

_____/

2

WHEREAS, Plaintiffs have filed the above-captioned actions (the "Class Actions") in this Court for alleged violations of the antitrust laws involving the sale of filters, claiming violations of Section 1 of the Sherman Act, 15 U.S.C. § 1; and

WHEREAS, the Class Actions are related cases involving common questions of law and fact; and

WHEREAS, consolidation and coordination would promote the efficient disposition of these claims;

NOW THEREFORE, THE COURT ORDERS as follows:

   A.    **Consolidation and Coordination of Related Actions**

   1.    The Class Actions are consolidated pursuant to Federal Rule of Civil Procedure 42(a).

   2.    This Order shall apply to the Class Actions and to all other cases alleging violations of the antitrust laws involving the sale of filters that are filed in or transferred to this Court for consolidated or coordinated pretrial proceedings (collectively, "Related Actions").

   3.    The proceedings involving the Related Actions are hereinafter referred to as In Re Filters Antitrust Litigation, and a Master File Docket number is hereby established in which all entries are docketed. The Master Docket number shall be Case No.: 3:08-cv-00475(JBA).

   4.    Every pleading filed in In Re Filters Antitrust Litigation shall bear the following caption:

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


MASTER DOCKET NO. 3:08-cv-00475(JBA)


IN RE FILTERS
ANTITRUST LITIGATION
_____/


THIS DOCUMENT RELATES TO:

_____/


     5.    When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after or below the words "This Document Relates To" in the caption set out above.  When a pleading is intended to be applicable only to less than all such actions, the separate caption and docket number for each individual action to which the pleading is intended to be applicable shall appear immediately after or below the words "This Document Relates To" in the caption described above.

     6.    When a pleading is filed and the caption, pursuant to the foregoing, shows that it is applicable to "All Actions," the Clerk shall file such pleading in the Master File and note such filing in the Master Docket.  No further copies need be filed or docket entries made.

7.    When a pleading is filed and the caption, pursuant to the foregoing, shows that it is applicable to fewer than all of the <u>In Re Filters Antitrust Litigation</u> actions, the Clerk shall only file such pleading in the Master File but shall also note such filing in both the Master Docket and the docket of each such action to which it relates.

8.    This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of <u>In Re Filters Antitrust Litigation</u>, Master Docket No. 3:08-cv-00475(JBA).

9.    If a case that arises out of the same subject matter as <u>In Re Filters Antitrust Litigation</u> is hereinafter filed in this Court or is transferred to this Court from another court, the Clerk of this Court shall:

    a)    file a copy of this Order in the separate file for such action;

    b)    mail a copy of this Order to the attorneys for the Plaintiff(s) in the newly-filed or transferred case and to any new Defendant(s) in the newly-filed or transferred case; and

    c)    make the appropriate entry in the Master Docket for <u>In Re Filters Antitrust Litigation</u>, Master Docket No. 3:08-cv-00475(JBA).

10.    This Order shall apply to each of the Related Actions, unless a party objects to consolidation and coordination or any provision of this Order.  Any objection to this Order shall be made within fifteen days after the date upon which a copy of this Order is mailed by the Clerk of the

Court to counsel for any party by filing an application for relief with the Court. Nothing in the foregoing shall be construed as a waiver of a Defendant's right to object to consolidation of any action subsequently filed in or transferred to this Court.

   B.  <u>**Organization of Plaintiffs' Counsel**</u>

     11.  Pursuant to Fed. R. Civ. P. 23(g)(2), the Court shall appoint Interim Class Counsel who, upon appointment, shall be responsible for coordinating and organizing Plaintiffs in the Related Actions in the conduct of this litigation and, in particular, shall have the following responsibilities:

       a)  To brief and argue motions and file opposing briefs in proceedings initiated by other parties;

       b)  To initiate and conduct discovery proceedings;

       c)  To act as spokesperson at pretrial conferences;

       d)  To negotiate with defense counsel with respect to settlement and other matters;

       e)  To call meetings of Plaintiffs' counsel when appropriate;

       f)  To make all work assignments to Plaintiffs' counsel to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

       g)  To conduct trial and post-trial proceedings;

h)     To consult with and employ experts;

i)     To coordinate the filing of any joint fee petition by Plaintiffs' counsel;

j)     To perform such other duties and undertake such other responsibilities as they deem necessary or desirable; and

k)     To coordinate and communicate with Defendants' counsel with respect to matters addressed in this paragraph.

12.    The Court appoints the following firm as Plaintiffs' Interim Class Counsel for <u>In Re Filters Antitrust Litigation</u>:

**Labaton Sucharow LLP**
140 Broadway
New York, NY 10005
Telephone (212) 907-0700

13.    The Court appoints the following firm as Plaintiffs' Interim Liaison Counsel for <u>In Re Filters Antitrust Litigation</u>:

**Updike, Kelly & Spellacy, P.C.**
One State Street
P.O. Box 231277
Hartford, CT 06123-1277
Telephone: (860) 548-2643

14.    Interim Liaison Counsel shall be responsible for (1) receiving and distributing to all Plaintiffs' counsel orders from the Court and documents from opposing counsel; (2) facilitating

and expediting communications among Interim Class Counsel and the Court; and (3) maintaining a master service list of all parties and their respective counsel.

15.     No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any Plaintiff except through Plaintiffs' Interim Class Counsel.

16.     Plaintiffs' Interim Class Counsel shall be the contact between Plaintiffs' counsel and Defendants' counsel as well as the spokespersons for Plaintiffs' counsel before this Court and shall direct and coordinate the activities of Plaintiffs' counsel.

17.     Defendants shall effect service of papers on Plaintiffs by serving a copy of same on Plaintiffs' Interim Class Counsel by electronic mail, overnight mail, telecopy or hand delivery.  Plaintiffs shall effect service of papers on Defendants by serving a copy of same on Defendants' counsel by electronic mail, overnight mail, telecopy or hand delivery.

18.     The terms of this Order shall not have the effect of making any person, firm or corporation a party to any action in which he, she or it has not been named, served or added as such in accordance with the Federal Rules of Civil Procedure.

19.     The terms of this Order, the consolidation and coordination ordered herein, and the appointment of Plaintiffs' Interim Class Counsel and Interim Liaison Counsel shall not constitute a waiver by any party of any claims in or defenses to any of the Related Actions.

20.     An original of this Order shall be filed by the Clerk in the Master File and in the files for each of the Related Actions.

21.     The Clerk shall mail a copy of this Order to all counsel of record in the Related

Actions.

DONE AND ORDERED in Chambers this ___ day of _____, 2008.


_____
JANET BOND ARTERTON
United States District Judge